## Ashhurst's Appeal.

1. An unmarried woman conveyed in trust all her property to be invested, with authority to sell and reinvest and collect the rents and income, and after deducting taxes, &c., to pay it to her or her appointee during life, if she should so long be unmarried; in case of marriage, to pay the rents and income, to her or her appointee, during her life, for her separate use, but not to be subject to the debts or control, &c., of her husband; upon her death to such persons and use as she by will should appoint; and for want of appointment to such persons and for such estate as her property would go under the intestate laws; with authority to the trustees to sell absolutely or on ground-rent, the proceeds of sale and ground-rent to be for the same trusts, after paying her for her separate use $1500, and on her request to mortgage the property for $3000, in prospect of her marriage. She married and survived her husband. *Held*, that the trust continued.

2. The trust for the woman was only of the income, and her interest was but that of a tenant for life.

3. If the beneficiary of a trust be a woman the benefactor can protect her from her own debts and improvidence, as well as from those of her husband.

4. One may make an irrevocable trust for himself for life, and remainder for his children, if the rights of creditors do not intervene, and it be an active one, if so drawn that the entire equitable interest does not vest in the *cestui que trust*.

5. A spendthrift trust may be created as well for a woman as a man.

6. Earp's Appeal, 25 P. F. Smith 119, followed; Koenig's Appeal, 7 Id. 352, distinguished.

February 24th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Philadelphia:* Of January Term 1875, No. 3. In Equity.

The bill in this case was filed April 1874, by Virginia Kennard, widow of Manning Kennard, deceased, formerly Virginia Eyre, against John Ashhurst, who, with Charles Massey, Jr., was trustee, &c.

The bill set out that on the 23d of June 1846, the plaintiff, then unmarried, conveyed all her property, real and personal, to the above-named Ashhurst and Massey, and the survivor, in fee, " In trust * * * to let or demise the real estate hereby granted and conveyed, and to invest and keep invested the moneys and personal estate hereby assigned and transferred in good and secure mortgages of real estate, at interest in the public loans of the United States, of the state of Pennsylvania or of the city of Philadelphia, or in the purchase of ground-rents, and the same from time to time to call in, assign, sell, and dispose of, and again invest as aforesaid, and to recover, collect, and receive the rents and income thereof, and pay over the same, when and as received, and not by anticipation, after deducting all taxes and necessary repairs, of the said trust estate, and all reasonable costs, charges, and expenses attendant upon the execution of this trust, into the hands of the said Virginia Eyre, or unto such person or persons as she

shall, by any writing, under her hand, appoint and direct, for and during all the term of her natural life, if she shall remain so long sole and unmarried. But in the event of the marriage of the said Virginia Eyre, then and in such case to hold all and singular the said trust estate, from and immediately after the marriage of the said Virginia Eyre, * * * to pay the net rents and income to the said Virginia Eyre, or unto such person or persons as she shall, by any writing, under her hand, direct and appoint, for and during the term of her natural life, to and for her sole and separate use and benefit, but so that all and singular the said trust estate, the rents and income thereof, and every part thereof, shall not be subject or liable to the debts, control, or engagements of any husband she may have or marry, and for which rents and income the receipts of the said Virginia, in her own name, or the receipt of the appointee or appointees, shall be deemed good and valid discharges in the law, and from and immediately after the decease of the said Virginia, then to and for the only proper use and behoof of such person or persons, and for such estate and estates, and in such sort, manner, and form as she, the said Virginia, by her last will shall appoint, and for want of such last will or appointment, then to and for the only proper use, &c., of such person or persons, and for such estate and estates, and in such sort, manner, and form, to whom and as the same would have gone under the intestate laws of Pennsylvania, had she, the said Virginia, died intestate, seized thereof; Provided, that it shall and may be lawful to and for the said Charles Massey, Jr., and John Ashhurst, and the survivor of them, at any time hereafter during the continuance of this trust, to grant, and sell absolutely, &c., * * * all or any part or parcel of the real estate hereby granted and conveyed, and to grant and convey * * * on ground-rent, * * * reserving out of and for such parts and parcels respectively, the yearly ground-rent * * * to them, the said Charles Massey, Jr., and John Ashhurst, for the uses and purposes, and subject to the like powers and authorities in respect to sale and otherwise, as are herein and hereby declared of and concerning the estate hereby granted, and with the clauses of entry, distress, and re-entry and covenant for payment of the rent and taxes, and with or without a provision for the extinguishment of the same rent or rents within a limited time as may be agreed upon, and also to join in any partition or exchange of the real estate or any part thereof, and upon receipt of the purchase-money or securities for such sales as aforesaid, and upon receipt of the principal or extinction moneys of any yearly ground-rent hereby assigned and conveyed, or of any yearly ground-rent that may hereafter be reserved, and upon such partition or exchange as aforesaid, to make and execute in due form of law, all such deed releases, &c., * * * as shall be necessary and proper to carry into effect any such sale, * * * in trust, out of the first moneys

27 P. F. SMITH—30

to be so produced to pay to the said Virginia, for her own separate use, the sum of $1500, and the residue thereof, and all other moneys to be produced by such sale, * * * to invest, &c., * * * and provided, that it shall and may be lawful for the said Charles Massey, Jr., and John Ashhurst, and the survivor, to raise, by mortgage of the premises, the sum of $3000, if requested to do so by the said Virginia Eyre in prospect of marriage, which request shall be evidenced by the said Virginia Eyre joining in any such mortgage." * * *

The bill further set out that, since the creation of the trust, the plaintiff married Manning Kennard, who had died, and that Massey, one of the trustees, was dead; that the trust was no longer an active trust, and that plaintiff was entitled to a decree declaring the trust ended, and that she was entitled to a reconveyance of the trust property.

The prayers were for such decrees.

The answer of the trustee admitted the facts set out in the bill, and submitted to the judgment of the court the law arising upon them.

The Court of Common Pleas, Ludlow and Peirce, JJ., decreed that the trust was ended, and that the trustee should convey the trust property to the plaintiff absolutely.

The defendant appealed to the Supreme Court, and assigned the decree of the Court of Common Pleas for error.

*R. Evans*, for appellant.—The duties imposed make the trust an active one : Barnett's Appeal, 10 Wright 392 ; Sheets' Estate, 2 P. F. Smith 257 ; Bacon's Appeal, 7 Id. 504 ; Earp's Appeal, 25 Id. 119. The purpose of the trust in this case was not against coverture. The most that appellee can take, under the deed, is a life-estate. Her interest is expressly limited for life, and the power of appointment would not of itself enlarge this to a fee : 4 Kent Com. 319 ; Anderson *v.* Dawson, 15 Ves., Jr. 532 ; Girard Co. *v.* Chambers, 10 Wright 489 ; Dodson *v.* Ball, 10 P. F. Smith 499 ; Ralston *v.* Waln, 8 Wright 287.

*J. W. Paul*, for appellee.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 10th 1875.

The opinion of this court in Earp's Appeal, 25 P. F. Smith 119, although it had been filed, was not published at the time the decree in this case was made below, otherwise the learned court would certainly have come to a different conclusion upon the question raised upon the bill and answer. The trusts of the will of Robert Earp were in all material particulars identical with those set out in the deed of trust in this case. There, as here, the trust

was to collect and pay over the rents and income of the estate to the beneficiaries for life, with an ultimate disposition of the corpus or estate itself to such persons as would be entitled under the intestate laws of the Commonwealth.   There was a clear distinction in the language and intention of the testator between the income and the estate itself.   It was necessary in order to carry the intention into effect, that the trust should be an active one, not an executed use under the statute.   Most especially was this true as to the personalty, which would otherwise be exposed to risk in the possession of the life-tenant, against which the testator obviously intended to provide.   There was in that case interposed, as here, a power of appointment by will, but that evidently did not affect the question.   The life-estate was then an equitable one, and the remainder to the heirs or persons entitled under the intestate law was an executed use, a legal estate.   The two estates did not coalesce under the operation of the rule in Shelley's case.   It was not a case in which the entire equitable fee or absolute estate was in the beneficiary, where the continuance of the trust is no longer necessary, and ought therefore to end at the volition of the *cestui que trust*.   In the deed now before us, the trust was " to let and demise the real estate, and to invest and keep invested the personal estate ; to collect and receive the rents and income, and to pay over the same when and as received, and not by anticipation, after deducting all taxes and necessary repairs and all reasonable costs, charges and expenses attendant upon the execution of the trust, into the hands of Virginia Eyre, for and during all the term of her natural life."   Then, with a provision to protect it from the debts or control of any husband whom she might afterwards marry, and for a power of appointment by will " in trust to the only proper use, benefit and behoof of such person or persons, and for such estate and estates, and in such sort, manner and form, to whom and as the same would have gone under the intestate laws of Pennsylvania, had she, the said Virginia, died intestate, seised thereof."   Here, then, as in Earp's Appeal, the corpus of the estate is fully and distinctly invested in the trustees, and put under their control.   The trust for Virginia Eyre is only of the income, and her interest in that is only for life.   The principal is given over to the persons who would be entitled to it under the intestate law.   Although a provision is introduced to guard the income payable to Virginia Eyre from the control, debts, or engagements of her husband, it was not a trust for coverture under any of the decided cases.   In Megargee *v.* Naglee, 14 P. F. Smith 216, and in the cases cited by the present Chief Justice in his opinion in that case, in support of the position that a trust for coverture ceases on discoverture, it will be found that in all of them, the absolute interest or equitable estate was in the wife, either directly or by the operation of the rule in Shelley's case, where an express estate for

[Ashhurst's Appeal.]

life was given. Koenig's Appeal, 7 P. F. Smith 352, may look like an exception; but if the opinion in that case by Mr. Justice Strong be carefully examined, it will be seen that the case was ruled by the provisions of the will, that if the feme should survive her husband, the trustee should assign the estate to her absolutely and in fee. This showed clearly that the testator raised the trust solely for the purpose of protection against coverture. When the coverture ceased, there, by a divorce *a vinculo*, the trust came to an end just as it certainly would have done by the express words of the will if the husband had died. If the beneficiary be a woman, surely the benefactor can protect her from her own debts and improvidence, as well as against the debts and improvidence of her husband. That he can do this as to a man is beyond question, and no principle or policy requires any distinction in this respect between the sexes. It is true, that girls are not so often spendthrifts as boys, but they may sometimes be, and if extravagance in female dress continues as it has begun, the fortunes of girls may be as rapidly dissipated in that way, as by intemperance, gambling and licentiousness in young men.

It is hardly necessary to add, that the rights of creditors not being in question, a person may make an irrevocable deed of trust of property for himself for life with remainder to his children, and the trust be an active one, if so drawn that the entire equitable interest or estate does not vest in the *cestui que trust*. Such deeds are often executed by young men or women by the advice of judicious friends, and to hold that they can be revoked at pleasure, would render such dispositions worse than useless.

Decree reversed; and now, it is ordered and decreed that the bill be dismissed at the costs of the appellee.