## WILLIAM GHORMLEY v. E. A. SMITH ET AL.

APPEAL BY PHILA. TRUST CO. FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 7, 1891—Decided February 2, 1891.

[To be reported.]

1. While it is well established in Pennsylvania that a parent may make a settlement in favor of a child, by way of a spendthrift trust, which will protect both principal and income against the child's creditors, it has never been held that a person sui juris may settle his entire estate upon himself, free from liability for debts.

2. The policy of the law will not permit property to be so limited as to remain in the grantor for life, free from the incidents of property and not subject to his debts; and to this extent the English doctrine seems to have been retained in this state, notwithstanding the departure therefrom in the matter of spendthrift trusts: Mackason's App., 42 Pa. 330.

3. A single woman, not in contemplation of marriage, cannot settle her own property upon trusts, in such a way that she shall receive and enjoy the income thereof during her life, and have a power to dispose of the property by appointment at her death, and yet so that it shall not be subject to liability for her lawful debts.

4. At all events, the income reserved to the grantor, in such a settlement, will be liable for her debts, notwithstanding an express limitation to the contrary, and notwithstanding that her power of appointment in remainder is subjected by the deed of settlement to some restrictions, and the settlement is expressly made irrevocable.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 346 January Term 1890, Sup. Ct.; court below, No. 257 December Term 1889, C. P. No. 4.

On December 11, 1889, there was filed in the court below the record of a judgment for $346.17, recovered in the Court of Common Pleas No. 1 of Allegheny county by William Ghormley against Edward A. Smith and Henrietta C. Smith, his wife, and on the same day a writ of execution-attachment was issued thereon, and afterwards served upon the Philadelphia Trust, Safe Deposit & Insurance Company, as garnishee of Henrietta C. Smith.

The garnishee, in response to a rule to answer certain interrogatories, filed an answer setting forth that the respondent was trustee for Mrs. Smith, under a deed executed by her before her marriage, her name being then Henrietta T. Catherwood. A copy of the deed was annexed to the answer. It bore date July 23, 1879. By said deed, Henrietta T. Catherwood conveyed to the Philadelphia Trust, Safe Deposit & Insurance Company, all her property, real and personal, upon trusts in substance as follows:

To collect the income and pay over the same when and as received and not by anticipation, after deducting all taxes, necessary repairs, and all reasonable expenses of the execution of the trust, into the hands of the said Henrietta T. Catherwood, or to such person or persons as she should, by any writing under her hand, appoint and direct, for and during all the term of her natural life, whether she should remain sole or should marry, to and for her sole separate use and benefit, "so that all and singular the trust-estate, rents and income thereof, and every part thereof, shall be absolutely free from and not subject or liable to the debts, control, or engagements of any husband she may have or marry, or to her own debts, control, or engagements," her receipt or the receipt of her appointee to be a good and valid discharge, etc.; the grantor reserving a power to limit and appoint the estate by will among her children upon her death, and in default of such appointment the property to be conveyed to the use of her children, and the issue of deceased children, absolutely, subject, however, to any provision which the grantor might make for the payment of income to a surviving husband; or, if the grantor should leave no issue, then reserving a general power of appointment, and in default of its exercise the property to be held in trust for her surviving husband during his life, and at his death, or at the grantor's death, should she leave no husband, then in trust for the person or persons who would be entitled to the same under the intestate laws, had the grantor died seised and possessed thereof.

The deed gave to the trustee large discretionary powers as to selling and conveying the trust property, changing investments, and as to the general management of the trust-estate, and reserved to the grantor, in case of her marriage, power to withdraw from the trust a sum not exceeding $5,000, for the

purpose of furnishing a house for her residence; and it contained the following further provision:

"This deed, indenture and conveyance, to be absolutely irrevocable in any event whatever, the question of inserting a power of revocation having been carefully submitted to and considered by said party of the first part, and deliberately determined to be excluded."

The answer averred, further, that the deed to the respondent, as trustee, was made by Henrietta T. Catherwood immediately after her becoming of age, with the intention and design of thereby creating an irrevocable trust for the protection of the property of the said Henrietta T. Catherwood from the control of any future husband she might marry, and from her own control and from liability to the debts and engagements either of herself or of any future husband; that the reserved power to withdraw from the trust, in the event of her marriage, a sum not exceeding $5,000, for the purpose of furnishing a house for residence, was exercised by the grantor and said sum was paid to her by the trustee, $2,000 thereof being paid on September 10, 1879, and $3,000 on January 2, 1880; that the trustee, at the time of answering, held in trust, under said deed, personal property of the par value of $38,285.11, and a one third interest in certain ground rents paying an annual income of $1,163.08, and had in its hands, to the credit of Mrs. Smith, net income to the amount of $561.52; "that this deed of trust was a good and valid provision by Mrs. Smith for the benefit of herself and family, and being made, as it was, by a single woman, not in debt at the time, and not with a view to embarking in business or contracting debts, but with a view to protecting her estate in the event of future coverture, it sins against no policy of the law, but, on the contrary, its provisions for the protection of herself and family should be maintained like trusts commonly classed as spendthrift son's trusts."

The answer also admitted the holding of certain funds as an active trustee under the will of Ann Catherwood, deceased, the same having been bequeathed to be held in trust for her benefit during life, free from the control of the beneficiary,* etc.

---

* It was stated in the paper-book of the appellant that Miss Catherwood was married to Edward A. Smith soon after the date of the deed mentioned

A rule for judgment against the garnishee, on the answer filed, having been taken, the court in banc, after argument thereof, entered the following order :

February 15, 1890, judgment for the plaintiff, and it is considered and adjudged that the garnishees have in their hands the sum of $352.55* belonging to the defendant and subject to this attachment.[1]

Thereupon, the garnishee took this appeal, specifying that the court erred :

1. In making the order for judgment.[1]

3. In not entering judgment for the garnishee upon its answer.

4. In not discharging the rule for judgment.

*Mr. R. L. Ashhurst* (with him *Mr. Rowland Evans*), for the appellant :

1. The garnishee having admitted the possession of income, held under the trust created by Mrs. Smith, to an amount greater than the plaintiff's judgment, no recourse was attempted to be had against either the corpus of that trust-estate, or the moneys coming from the trust under the will of Mrs. Catherwood, and the sole question now presented is the liability to attachment of the income of the property conveyed to the garnishee by Mrs. Smith before her marriage. The decision of the court below is not based upon any construction of the language of the trust deed, but, on the contrary, overrides and subverts its intention, and can be sustained only upon the ground that the trust is invalid, as in contravention of public policy or in violation of the statute 13 Eliz., c. 5. As has often been held, the statute of Elizabeth was really declaratory of the law, and therefore there is but one question presented, to wit: whether it is contrary to the policy of the law that a young girl, on attaining majority but without immediate contemplation of marriage, should be able to settle her patrimony so that the income shall not be subject to her husband's control, or her own anticipation, or to his or her debts.

2. It will be most unfortunate, in many respects, if such

---

in the garnishee's answer; that Mr. and Mrs. Smith have since resided in the city of Pittsburgh. and that they have three children living.

* These figures so printed in the docket entries.

Arguments.

settlements be declared invalid. Experience has shown their necessity, to preserve for the wife and her children the income of her estate in all vicissitudes of fortune, and that it is wise for young ladies to make such provisions, before contracting marriage engagements, when the consent of the future husband is not required. Although the law may be otherwise in England, it is well settled in Pennsylvania that such settlements may be made for the beneficiary, male or female, by a donor or devisor, and no other class of trusts is so favored by our courts : Fisher v. Taylor, 2 R. 35 ; Eberly's App., 110 Pa. 95 ; Phila. Trust Co. v. Guillou, 100 Pa. 258 ; Ashhurst's App., 77 Pa. 464 ; Thackara v. Mintzer, 100 Pa. 154 ; Barger's App., 100 Pa. 240 ; Patterson v. Caldwell, 124 Pa. 460 ; Peoples S. Bank v. Denig, 131 Pa. 241. It cannot be doubted that the young girl's father might have so settled her estate, and it probably would not seriously be disputed that, after betrothal, she and her intended husband might safely have so limited it by a marriage settlement. Why should she, if her father unfortunately died intestate, be precluded from making a settlement herself, in advance of any affair of the heart ?

3. A theory has been advanced, and is sought to be supported by the English cases and Mackason's App., 42 Pa. 330, to the effect that " a man cannot so settle his estate, that he shall have the benefit of the income thereof during his life and the disposal thereof after his death, and yet so that it shall not be liable to his creditors." We contend that this doctrine, as thus broadly stated is not law in Pennsylvania. The English rule is even broader, and goes to the extent that a trust cannot be created by which the beneficiary shall enjoy the income during life, with a power of disposition after death, which shall keep the property beyond the reach of creditors : Brandon v. Robinson, 18 Ves. 429 ; Adams' Eq., *42 ; Bispham's Eq., § 62 ; Perry on Trusts, 555 ; and this certainly is not law with us, our books being full of spendthrift trusts carefully upheld and protected. The distinction between trusts created by ancestors, and those created by the man himself, for himself and his family, is without authority, either here or in England. Its only basis is certain obiter dicta in Mackason's App., supra. The rights of creditors, referred to by Mr. Justice SHARSWOOD, in Ashhurst's App., 77 Pa. 464, which cannot be affected by a

deed of trust, must be taken to mean rights of creditors existing at the time of its execution.

4. But a careful examination of the facts in Mackason's App., *supra*, will show that the decision, whether law or not, has no application to the case at bar. It was placed, to some extent, on the ground that an unlimited power to appoint in fee renders the estate assets for the payment of the appointor's debts, following the English rule on that subject. But that rule has since been expressly repudiated in Swaby's App., 14 W. N. 553. Our case is distinguishable from Mackason's Appeal on several grounds : (*a*) The deed, in that case, appears to have contained no provision making it irrevocable, and therefore the settlor had power to revoke the trust : Russell's App., 75 Pa. 269 ; (*b*) the remainder was limited substantially to the heirs of the settlor, who thus practically had the entire beneficial interest and full control of the legal title during his life ; (*c*) the attack was made by creditors in that case after the death of the beneficiary, when the purpose of the trust had been fully accomplished ; (*d*) the settlement was made by a man, and not, as in the present case, by a woman, whose natural future was the marriage state, and not the struggle for life in business pursuits, and any considerations of public policy that might exist in the case of a man have no application here. Settlements of this kind were highly commended by Mr. Justice SHARSWOOD, in Ashhurst's App., 77 Pa. 464.

*Mr. H. B. Gill* (with him *Mr. John R. Read* and *Mr. Silas W. Pettit*), for the appellee :

Mackason's App., 42 Pa. 330, directly answered the sole question presented in the case at bar. The appellant's counsel have not cited, nor can they find, a single case deciding that the grantor can settle his own property upon himself, so that it will not be liable for his debts. The contrary was expressly decided by this court in Mackason's App., *supra*, and by the lower courts in Lewis *v.* Miller, 21 W. N. 94 ; Andress *v.* Lewis, 17 W. N. 270. It is true that a settlor may make a gift of his property, where a present interest passes, which is irrevocable as against himself, and valid as to creditors not existing at the time and not intended to be defrauded : Harlan *v.* Maglaughlin, 90 Pa. 293 ; Kimble *v.* Smith, 95 Pa. 69 ; Haak's

App., 100 Pa. 59; Buckley v. Duff, 114 Pa. 596; and, for the purposes of this case, it may be conceded that Mrs. Smith's gift of the remainder to her children was such. But the income which she never gave away, but retained for herself, does not fall within that rule. It is therefore unnecessary to discuss the question, whether the provision making the deed irrevocable would be sufficient to distinguish the case from Mackason's Appeal. To say that she may keep her property, or any part of it, and still not have it liable for her debts, is in the teeth of both reason and authority. Her sex should make no difference in this respect.

OPINION, MR. JUSTICE CLARK:

The conveyance of Henrietta T. Catherwood to the Philadelphia Trust etc. Co., dated July 23, 1879, was of all her estate, of whatsoever character, real or personal, in trust, to collect the income thereof, and, after deducting expenses, etc., to pay the same, "when and as received, and not by way of anticipation," to the grantor herself, or to her appointee, for her life, whether she should remain sole or should marry. The said incomes were declared to be "to and for her sole separate use and benefit, so that all and singular the said trust-estate, rents and income thereof, and every part thereof, shall be absolutely free from, and not subject or liable to, the debts, control, or engagements of any husband she may have, or marry, or to her own debts, control, or engagements; and for the said rents or incomes, the receipts of the said party of the first part, whether covert or sole, in her own name, or the receipt of her appointee or appointees, shall be a good and valid discharge in law of said trustee."

By the terms of the conveyance, the grantor, whether covert or discovert, reserved to herself a power of appointment by will to her children, or to the issue of deceased children, if any she had at her death, or, in default thereof, to whom she may see fit, subject, in either event, to the restriction that no gift to a surviving husband should exceed the net income of the trust-estate, during his life; in default of an appointment by will, then the estate to be conveyed to her children, and to the issue of deceased children, if any, absolutely in fee; or, leaving no children, or the issue of deceased children, to such person or

persons, for such estates, as they would have been entitled to under the intestate laws, if the grantor had died intestate and seised thereof.

The deed was declared irrevocable ; and the trustees, immediately upon the execution and delivery thereof, entered into the possession, and assumed the duties of the trust. Soon afterwards the grantor, Henrietta T. Catherwood, became Henrietta C. Smith, by marriage with Edward A. Smith, and exercised a privilege reserved in the deed of withdrawing $5,000, for furnishing her house. She has now three children living.

The garnishees' answers set forth that they have in their hands net income, under the deed of trust, due to Mrs. Smith, amounting to $561.52, and also certain income of property held in trust for Mrs. Smith under the will of her grandmother, Ann Catherwood, deceased. As to the latter, it was admitted that the provisions of the will protected it from attachment, and there was no contention whatever on that point. The court below entered judgment for the plaintiff for the full amount of his claim, out of the income in the garnishees' hands under the deed of trust, and it is this judgment which is appealed from. The question presented for the consideration of the court is solely as to the liability of the income of the property, held by the garnishees under the deed of trust, to attachment for the debts of Mrs. Smith.

It is contended, on part of the appellees, that it is against the public policy, as well as the statute of Elizabeth, which was declaratory only and was founded on public policy, that a person should settle his estate so that he may have the benefit of it during his life, and the disposal of it at his death, and yet not be liable to his creditors.

It is not pretended that the trust in question is sustainable as a trust for coverture, or for the separate use of the grantor, for she was then unmarried, and, although she was in a very short time afterwards married, it was not shown, nor is it alleged, that it was created in contemplation of that event. No such question arises, and it is not necessary for us to consider the effect of the deed, if the grantor at the time had in contemplation the marriage relation which was afterwards formed. The claim of the attaching creditor cannot be affected or impaired, unless the transaction is what is known as a " spendthrift trust."

It is well settled in this state, since Barnett's App., 46 Pa. 392, although before that a contrary doctrine prevailed, that where an active trust is created to give effect to a well-defined and lawful purpose of a donor or devisor, with respect to the party to be benefited thereby, the trust will be sustained, whether the cestui que trust be sui juris or not. It is as well settled in Pennsylvania, that it is a lawful purpose, upon part of a father, to protect his bounty to a spendthrift son, both principal and interest, not only against his son's improvidence, but also against his creditors: Fisher v. Taylor, 2 R. 33; Brown v. Williamson, 36 Pa. 338; Rife v. Geyer, 59 Pa. 395; Overman's App., 88 Pa. 276; Eberly's App., 110 Pa. 95; Peoples S. Bank v. Denig, 131 Pa. 241; and in Ashhurst's App., 77 Pa. 464, it is said that a spendthrift trust may be created as well for a woman as for a man. But it has never been held by this court that a person sui juris could settle his entire estate upon himself, free from liability for debts. Indeed, the very contrary has been ruled in Mackason's App., 42 Pa. 330. In that case, the trustees were to hold the estate of the settlor, free and clear of his debts; to pay the net income, without anticipation, during his life to himself; after his death to his appointee by will, and, in default of an appointment, to his heirs; and it was held that property so settled was assets in the hands of the trustees for the payment of debts, whether contracted prior or subsequent to the execution of the deed of trust, and that the devisees or appointees under the will of the settlor were postponed to his creditors. After stating the facts, this court, in the opinion filed, says:

" This statement brings us to the simple inquiry, can the owner of property so dispose of it for his own use, benefit, and support as to put it beyond the reach of liability for his future debts, he being and continuing sui juris, and there appearing to be no reason therefor, excepting to withdraw it from such liability and thus retain the temporal ownership with its incidents? This would be a startling proposition to affirm. It would revolutionize the credit system entirely, destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against frauds."

The cases are not precisely similar, but in both it is clear that the design of the deed was to limit the property so that

the grantor should enjoy it for life, with power to dispose of it at death, and yet that it should not be subject to the grantor's debts. The power of disposition at death is, in this case, subject to some restriction; but, as this restriction is self-imposed in the deed, it is difficult to see how any distinction can be drawn which will affect the general principle involved. In both cases, not only the purpose, but the only purpose, was that the grantor should enjoy the property, and that it should not be subject to the grantor's debts. The difference most strongly urged is that the grantor in Mackason's Appeal was a man, whilst here the grantor is an unmarried woman; but we think no principle or present policy of the law requires any distinction, in this respect, between the sexes. It may be that, if the rights of creditors had not intervened, the trust would be deemed irrevocable, and would be upheld even as against the grantor herself, but as against creditors, either prior or subsequent, the terms of the trust would not avail. In Ashhurst's App., 77 Pa. 464, a trust was created by Virginia Eyre, an unmarried woman; the incomes of her estate payable to herself as the beneficiary for life but not by way of anticipation, free from the debts, engagements, and liabilities of any husband she might have, and at her death the corpus of the estate to her appointee by will, with an ultimate disposition, in default of an appointment, to the persons entitled under the intestate law, as if the said Virginia had died intestate seised thereof. A bill was filed by the grantor herself, setting forth the terms of the trust, her subsequent marriage, and the death of her husband, averring that the trust was no longer active, and praying for a re-conveyance. It was held, however, that, as the rights of creditors were not brought in question, the trust was irrevocable, that the grantor was not entitled to a reconveyance, but that the trust must be continued.

But the policy of the law will not permit property to be so limited as to remain in the grantor for life, free from the incidents of property, and not subject to his debts: 4 Kent Com., 311. To this extent the rule of the English cases, which is, of course, much broader, prohibiting altogether the creation of a spendthrift trust, (Brandon v. Robinson, 18 Ves. 429; Adams Eq., *42) seems to have been retained in Penn-

sylvania: Mackason's Appeal, supra. But, whilst in the recognition of spendthrift trusts we have departed from the English rule, there is no case, in Pennsylvania, which goes to the extent of recognizing a spendthrift trust, in which the grantor is himself the sole beneficiary for life, with power to dispose of the trust property at death, yet neither the income nor the corpus of the estate subject to his debts.

The policy of our law is otherwise, and in Mackason's Appeal it has been plainly so declared.

The judgment is affirmed.

