[S. F. No. 6639.    Department One.—February 28, 1916.]

# D. A. McCOLGAN, Appellant, v. WALTER MAGEE, INCORPORATED, et al., Respondents.

Trusts—Spendthrift Trusts are Valid in California.—The general doctrine that spendthrift trusts, inalienable by the beneficiary and inaccessible to his creditors during his life or for a term of years, are valid in this state, is well established.

Id.—Spendthrift Trusts—Theory upon Which They are Sustained.—This doctrine rests upon the theory that a donor can give his property to another upon any conditions which he sees fit to impose, and that, as the gift takes nothing from prior or subsequent creditors of the beneficiary to which they could look for payment, they cannot complain that the donor has provided that the income be paid personally or be not subject to the claims of creditors.

Id. — Public Policy Where Trust Created by Beneficiary. — Upon grounds of public policy one cannot by any disposition of his own property put the same, or the income thereof, beyond the reach of his creditors, so long as he himself retains the right to receive and use it.

Id.—When Property Conveyed by Beneficiary—Rights of Beneficiary Subject to Claims of Creditors.—Where the beneficiary of a trust transferred or caused to be transferred his interest in trust property to the trustees upon a trust which provides that the income shall be paid to himself free from all claims of creditors, the property would remain his own notwithstanding the disposition of it, and would be subject to execution in the same manner as any other property.

Id.—Consent of Others Necessary to Conveyance.—When the entire subject matter of the trust was contributed by the beneficiary, although certain other persons by refusal to consent could have prevented the transfer but had no interest in the property, the interest in the property of the beneficiary under the trust is subject to the claims of creditors of the beneficiary.

Id.—Fraudulent Intent of Grantor not Essential.—This doctrine does not depend upon the fraudulent intent of any person connected with the transaction.

Id.—Suit by Creditor to Subject Interest of Beneficiary to Claim —Proper Parties.—A party having an interest in the trust is a proper, but not a necessary, party to an action brought to subject the interest of the beneficiary in the trust property to the claims of a creditor of the beneficiary.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Coogan & O'Connor, and E. J. Talbott, for Appellant.

Charles S. Wheeler, John F. Bowie, and Nathan Moran, for Respondents.

SHAW, J.—The court below sustained a demurrer to the complaint and thereupon entered judgment in favor of the defendants and against the plaintiff, from which the plaintiff appeals.

On April 9, 1908, one James Nolan recovered judgment against Walter Magee for $3,957.43. Execution was duly issued thereon and levied upon 4,179 shares of the capital stock of the corporation known as Walter Magee, Incorporated. The plaintiff purchased the same at the execution sale and the sheriff thereafter executed to him a regular certificate of sale therefor. The shares referred to stand severally in the names of the defendants William A. Magee, Thomas Magee, Charles S. Wheeler, Frederick E. Magee, Charles W. Brock, each holding one share, and William A. Magee and Thomas Magee, as trustees, the said two trustees holding 4,173 shares thereof. Who owns the remaining share is not stated. The plaintiff demanded of said defendants the possession of said shares and demanded of the corporation the transfer thereof on the corporation books to the plaintiff, all of which was refused. Thereupon the plaintiff began this action to compel the corporation to transfer the said shares to him. The case presents for consideration the single question whether or not the said shares, or any interest therein, were the property of the said Walter Magee and subject to execution under the judgment against him. To a discussion of this question it is necessary to state the facts in some detail.

On December 2, 1896, Thomas Magee, Sr., executed a deed of trust conveying a large amount of property to William A. Magee and Thomas Magee, Jr., as trustees for William A. Magee, Thomas Magee, Frederick E. Magee, and Walter Magee. The terms of the trust were that the trustees should

reccive the rents, issues, and profits of the property and pay over the net income thereof monthly to each of said beneficiaries, share and share alike; that the said trust should in no event extend beyond the lives of the beneficiaries, but that at any time after the death of Thomas Magee, Sr., any three of the beneficiaries might terminate the trust by acknowledging and recording a declaration in writing to that effect, and that upon such termination of the trust the property embraced therein should belong to said beneficiaries share and share alike, that is, one-fourth to each. It further provided that upon *any* determination of said trust all the property should belong to the beneficiaries share and share alike, and declared that the donor, Thomas Magee, Sr., granted the remainder, after any determination of the trust, and after his death, to the beneficiaries share and share alike.

Thomas Magee, Sr., died on September 30, 1902, and his property was duly distributed in accordance with the trust. Thereupon the trustees named in the deed accepted the trust, took possession of the property and proceeded to administer it in accordance with the trust. In February, 1905, Walter Magee, Incorporated, was created as a corporation and the trustees aforesaid received from said corporation the said 4,179 shares of its capital stock, the same thereupon becoming a part of the property held by them in trust under said trust deed, which, it may be added, expressly gave them power to exchange the original property for other property, and provided that the property received should be held under the same trust. On August 29, 1905, the four beneficiaries executed an agreement whereby the said trust was to be terminated and closed in the following manner: Appraisers were to be appointed to fix the value of the properties held by the trustees, and thereupon a segregation and distribution of the property was to be made according to the appraised value, giving to each beneficiary one-fourth thereof in severalty, but that "there should be segregated and set apart, as the one-fourth share of the said Walter Magee, and his successors in interest," the shares of stock aforesaid and cash sufficient, when added to the appraised value of said stock, to equal one-fourth of all the trust property; and further, that said shares should not go directly to said Walter Magee, but should be transferred to Thomas Magee, Jr., and William A. Magee, as trustees, to be held by them in trust as follows: "To collect

the income and dividends of said stock and to apply one hundred dollars per month of the said income to the use of said Walter Magee, during his life," and to pay the rest and residue of the income, if any, to Eva J. Shaw upon debts due to her from said Walter Magee, and upon the satisfaction of such debts, to pay the entire income to said Walter Magee during his life, and that upon his death said property should vest in his wife, Flora D. Magee. The agreement further declared that the interest of Walter Magee under the same "is hereby created inalienable, and it is particularly provided that the said Walter Magee cannot alienate, transfer or assign his interest thereunder, and the said moneys hereby directed to be applied to the use of the said Walter Magee and the interest of the said Walter Magee in this trust shall be exempt from the claims of creditors to the fullest extent permissible by law." This agreement was not recorded.

In pursuance of this agreement the property was appraised, and in an action between the beneficiaries a judgment was duly given on September 14, 1906, declaring that each of the trusts created by said deed were terminated and closed, "by the consent and agreement of the beneficiaries thereunder, that the giving of said consent by said beneficiaries and the termination and closing of said trusts was thereby ratified, confirmed and approved," and that there be set apart as the share of the said Walter Magee in said property the said shares of stock and $7,073.71 in cash, that said stock be transferred to Thomas Magee and William A. Magee, to be held by them in trust in accordance with the terms of said agreement of August 29, 1905. The remaining portions were divided among the other beneficiaries in fee.

The contention of the plaintiff is that the declaration in said agreement of August 29, 1905, that the interest of Walter Magee in the said shares of stock and the income therefrom was inalienable and exempt from the claims of creditors, was wholly ineffectual to accomplish that purpose, and that the same is subject to execution notwithstanding the said provision of said agreement.

Section 867 of the Civil Code provides that such trusts may be created in the rents and profits of real property, provided the beneficiary is restrained from disposing of his interest therein only during his life or for a term of years. Such trusts in real property are further qualified by the provisions

of section 859 of the Civil Code. (*Magner* v. *Crooks*, 139 Cal. 640, [73 Pac. 585].) It has also been held that trusts of similar character may be created in the income of personal property. (*Cutter* v. *Hardy*, 48 Cal. 568.) The general doctrine that spendthrift trusts, inalienable by the beneficiary and inaccessible to his creditors during his life or for a term of years, are valid in this state, is well established. (*Seymour* v. *McAvoy*, 121 Cal. 438, 442, [41 L. R. A. 544, 53 Pac. 946].)

The doctrine that property may be made inalienable by such declaration of trust rests upon the theory that a donor has the right to give his property to another upon any conditions which he sees fit to impose, and that, inasmuch as such a gift takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors. For this reason, and upon grounds of public policy, it is further held that one cannot by any disposition of his own property put the same or the income thereof beyond the reach of his creditors, so long as he himself retains the right to receive and use it. This qualification of the doctrine is as well settled as the doctrine itself. In *Seymour* v. *McAvoy*, 121 Cal. 438, [41 L. R. A. 544, 53 Pac. 946], referring to the first branch of the proposition above stated, the court said: "There is nothing in the policy of the law prohibiting a donor from providing that his bounty shall be enjoyed only by those to whom he intends to extend it, and that the property devoted by him to a trust otherwise valid shall not be diverted from its appointed destination." In *Pacific Nat. Bank* v. *Windram*, 133 Mass. 175, the court said: "Creditors of the beneficiary have no right to complain that the founder did not give his property for their benefit or that they cannot reach a greater interest in the property than the debtor has, or ever had. But when a man settles his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors while he retains the beneficial use of it. The practical operation of the transaction is that he transfers a portion only of his interest, retaining in himself a beneficial interest, which he attempts by his own act to render inalienable by himself and exempt

from liability for his debts. To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of exemption from his debts, seems to us to be going further than a sound public policy will justify." In *Ghormley* v. *Smith*, 139 Pa. St. 584, [23 Am. St. Rep. 215, 11 L. R. A. 565, 21 Atl. 135], the court said: "It is well settled in Pennsylvania that it is a lawful purpose, upon the part of a father, to protect his bounty to a spendthrift son, both principal and interest, not only against his son's improvidence, but also against his creditors. . . . But it has never been held by this court that a person *sui juris* could settle his entire estate upon himself, free from liability for debts." In *Brown* v. *Macgill*, 87 Md. 161, [67 Am. St. Rep. 334, 39 L. R. A. 806, 39 Atl. 613], the court said: "The theory upon which courts have held restraints upon alienation, etc., valid, is that the *cestui que trust* only has what the donor has given him—is the recipient of his bounty—and, therefore, if the donor has not given him the right to alienate the property or made it subject to the payment of his debts, no one has the right to complain. . . . But it is going too far and is too violently assaulting the policy of the law of this state, as indicated above, to permit a person to convey property owned by him to a trustee, and still retain full enjoyment of the income and revenues from it through the instrumentality of the trustees, and yet have the interest he retains for himself, worth, it may be, thousands or tens of thousands of dollars per annum, so fettered by his own act that it cannot be disposed of or be reached by his creditors. . . . To hold that a grantor can retain all the use and enjoyment of his property for life 'free from the incidents of property and not subject to his debts, would be a dangerous and startling proposition to sanction.' We do not think it can be sustained by reason or authority." In Missouri it is said: "Here is an attempt of a man, apparently, to tie up his own property under a trust in such a manner that himself, as owner, may be enabled to enjoy the income and set his creditors at defiance. This is a thing which the law does not allow. A man cannot own property or money and not own it at the same time." (*McIlvaine* v. *Smith*, 42 Mo. 45, 58, [97 Am. Dec. 295].) It follows from these authorities that if, upon the facts we have stated, the effect is that Walter Magee transferred, or caused to be trans-

ferred, his interest in the original trust property, or his segregated share thereof, to the last named trustees upon a trust which provides that the income therefrom shall be paid to himself free from all claims of creditors, it would be contrary to the policy of the law, the property would remain his own notwithstanding said disposition and would be subject to execution against him in the same manner as any other property interest.

The respondents concede that the qualifications to the doctrine exists as above stated, but claim that the transaction in question was not simply a disposition by Walter himself of his own property. The argument is that the original trust deed vested the property in the trustees for the life of the beneficiaries subject to the contingency that the trust might be sooner terminated, and thereby created contingent remainders in the property from the time of the happening of such contingency until the death of the beneficiaries, or some of them, that the contingent remainder of Walter is the property which constitutes the *corpus* of the new trust, that being a contingent remainder it was not a vested estate in Walter (Civ. Code, secs. 693–697), and could not become vested, during the lives of the beneficiaries, until the termination of the trust, that this could not be accomplished except by the voluntary act of persons other than Walter, that is, by three of the beneficiaries acting under the provision of the deed, or by all parties having any interest, that any of the other persons "might withhold consent to any unanimous arrangement, except upon conditions which he elected to impose," that the agreement and judgment carrying it out was made upon the condition that Walter's segregated rights and interest should be free from claims of his creditors, and that this condition imposed by them, and which they had a right to exact, constituted a consideration moving from them for the arrangement and settlement, a consideration of a substantial character and sufficient to uphold the new trust as one created by persons other than the spendthrift beneficiary, and to make it valid and free from the claims of his creditors.

The doctrine that one cannot by any device make his own property free from the claims of his own creditors is based not upon technical grounds, but upon sound reasons of public policy. The cases go so far to declare that if the donee. or grantee of such property pays a consideration therefor out

of his own estate or property, he cannot claim the benefit of a declaration of trust making it free from the claims of his creditors. Whatever may be the consideration moving from others, the trust cannot be allowed to free the property from the claims of creditors, where the consideration for the conveyance to the trustee or, as in this case, the entire trust property constituting the source of the income, is contributed by the beneficiary himself. Thus, in Missouri, a husband surrendered his estate by curtesy in his wife's land in order to take under the provision of his wife's will giving her real and personal property in trust for the payment of the income to the husband, the same to be free from the claims of his creditors. The court said that the doctrine of spendthrift trusts prevails because a creditor is not defrauded where the owner of property "so disposes of it that the object of his bounty, *who parts with nothing in return*," has an income therefrom free from liability for his debts, and added:

"In the case at bar the beneficiary did part with something in return. But for his compliance with the express condition in the will, by the surrender of his curtesy in his wife's estate by deed, as the petition recites, duly recorded, the income provided for his use would never have become his. This stands confessed by the demurrer. He, therefore, occupies the attitude of a purchaser of that income. . . . Regarding, then, the defendant in the light of a purchaser of the income bestowed upon him by the will of his wife, and not as the mere recipient of her bounty, it must be ruled that such income is subject to the claims of his creditors, and subject in this proceeding." (*Bank of Commerce* v. *Chambers*, 96 Mo. 459, [10 S. W. 38].)

Here the contribution of Walter was more than a mere consideration for the creation of the trust in his favor; it constituted the entire subject matter. It is true that the other parties might have refused to consent and could have prevented the creation of the trust. But they had no interest whatever in the share of Walter under the original trust. Under that trust such share was subject to the claims of Walter's creditors. They gave nothing to him by the termination of the trust except to cause his contingent interest to vest immediately. The transaction took nothing from them. In the Missouri case last mentioned the wife

created the trust voluntarily out of her own property, real and personal, and the surrender by the husband of his curtesy right in her land was essential to enable him to avail himself of her bounty, yet it was held that this constituted a consideration which took the case out of the rule allowing spendthrift trusts. In this case more was necessary,—both the consent of the others and the devolution of the interest of Walter upon the new trustees were essential; but it is true here, as there, that he gave a valuable consideration for the benefits of the trust, a consideration which, at the time he gave it, was subject to his debts, and he is, therefore, in the attitude of a purchaser of the income and of the property from which it is derived. The fact that his interest in the original trust was a future and not a vested interest is not material to the doctrine. It was his property (Civ. Code, secs. 669, 688, 693); it was not free from the demands of creditors, and it was disposable by him. (Civ. Code, secs. 699, 1044.) Public policy does not permit him to put it beyond reach of his creditors while he has the beneficial use of it himself.

The contention of the respondents that the complaint is defective because it does not allege that there was any intent on the part of any of the parties to defraud the creditors of Walter cannot be sustained. The doctrine we are enforcing does not depend upon fraudulent intent. The liability of the property to the claims of creditors comes from the fact that the disposition was ineffectual so far as it attempted to exempt the property from liability for his debts and because, as to creditors, it remained his own property, so far as his creditors are concerned, and not because of any intent to defraud in the creation of the trust.

Lastly, it is asserted that the demurrer was properly sustained because of a defect of parties, in that Eva J. Shaw, who, it appears, has an interest in the trust to the extent of the debt owing to her, which is not shown to have been discharged, is not made a party. We do not consider this a sufficient cause for the sustaining of the demurrer. If the plaintiff, by the execution sale, obtained any interest whatever in the property, he was entitled to have it transferred to him or protected in some manner, by the judgment of the court. In any event, whether he took it absolutely by transfer on the books or otherwise, inasmuch as Eva J. Shaw was

not made a party to the suit, he would take it subject to her interest, and the judgment would in no manner prejudice her. In such cases, although she is a proper party, she is in no sense a necessary party, and the court could proceed to judgment without her presence. We are, therefore, of the opinion that the demurrer was improperly sustained.

The judgment is reversed.

Sloss, J., and Lawlor, J., concurred.