WM. H. CLARK, *Assignee, etc.*, v. CHARLES L. ROBBINS.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS: *When Void.* A voluntary assignment for the benefit of the assignors' creditors, which by its terms reserves to the assignors $800 worth of the property assigned, to be afterwards selected by the assignors themselves, is void upon its face.

2. ——— A voluntary assignment by an insolvent debtor in trust for his creditors, which reserves to the assignor any benefit or advantage out of the property conveyed to the injury of the rights of the creditors, is void. (Affirming *Kayser v. Havenrich*, 5 Kas., 324.)

### *Error from Franklin District Court.*

ROBB BROTHERS, merchants, were in failing circumstances, and on the 26th of September, 1870, they made an assignment of all their stock, goods, accounts, etc., to plaintiff *Clark*, for the benefit of their creditors, reserving in and by the terms of said deed from their said goods "property to the value of $400 each," which they "shall elect to retain as 'stock in trade,' under the laws exempting certain property from execution." *Clark* took possession of the entire stock under said deed of assignment. Robb Brothers were indebted to Catlin & Son in the sum of $910.50, and on the 1st of October Catlin & Son sued out an order of attachment upon the alleged ground that Robb Brothers had "assigned or disposed of their property with intent to defraud, hinder, and delay their creditors," and on the same day the defendant *Robbins*, as sheriff of Franklin county, seized said stock of goods by virtue of said order of attachment as the property of said Robbs. Clark brought this action against the sheriff to recover the value of the property taken. *Robbins* answered, setting up the facts, and justifying under said order of attachment, etc.

The action was tried at the March Term, 1871. *Clark* offered in evidence the deed of assignment above mentioned, which the court excluded on the ground that said deed was void upon its face. The bill of exceptions contains this deed of assignment. The defendant gave in evidence his order of attachment, etc. It was admitted that the goods were of the value of $1,676.10. The jury found for the defendant. Motion for new trial overruled, and judgment on the verdict. *Clark* brings the case here on error.

*Maxwell & Deford*, for plaintiff in error:

1. The deed of assignment is not "void upon its face." It complies with all the requirements of ch. 6, Gen. Stat., relating to voluntary assignments for the benefit of creditors. It was made *bona fide*, and in trust for the creditors of the Robbs, and directs Clark to pay all the creditors in full, if there should be assets sufficient; if not, then *pro rata;* and it is duly executed, acknowledged, certified, and recorded.

But the court below held it "void upon its face" because it contained this clause: "Saving, excepting, and reserving from their stock of boots and shoes, hats and caps, goods, wares, and merchandise, property to the value of $400 each, which the said James Robb and Vincent C. Robb, parties of the first part, shall elect to retain as stock in trade, under the laws of the State of Kansas exempting certain property from sale upon execution or other process." What basis of reason the court relied upon in so holding we are at a loss to perceive, because the reservation is itself clearly a nullity. It had and could have no effect whatever, for there is not now and never was any exemption under the laws of Kansas of such property as boots, shoes, hats, caps, goods, wares, and merchandise "as stock in trade" to the value of $400, or any other value, in favor of the respective members of a firm, or of any other person. Hence the reservation "fell dead from the pen that wrote it," and it could not operate to make "void upon its face" this entire assignment.

2. But assuming, *pro hac vice*, that under the laws of Kansas

the Robbs are each entitled to the exemption they claimed, will it be contended that by claiming and reserving their rights under the law they thereby perpetrated such a fraud upon their creditors as to work the destruction of the whole assignment? Certainly not. But it is said that the assignors failed to elect their reserved share of the stock previous to the delivery thereof to the assignee, and that thereby an "inextricable confusion" of their goods with those of the assignee was occasioned, and that this state of things nullifies the whole transaction. We fail to see the logic of the argument, or even the truth of the fact. *Id certum est, quod certum reddi potest.* What difficulty could there be in selecting out of goods $800 worth of "stock in trade," either before or after the assignee took possession? Conceding, however, for the nonce that such "inextricable confusion" of the two classes of goods was willfully and fraudulently caused by the assignors, how could this avoid the conveyance? In what way could it tend to hinder, delay, or defraud the creditors? The assignors having willfully made the admixture would be compelled to suffer the consequences. Certainly they could not be visited upon the innocent assignee, and the still more innocent creditors. In such a case, it being impossible to separate the two classes of goods, the articles reserved by the assignors would pass with the rest to the assignee, and go in the course of distribution to the benefit of the creditors. Or will it be claimed that a fraud thus beneficial to the creditors can operate to destroy all their rights under the assignment? He who creates the confusion must bear the loss: 30 Me., 237; 19 Ohio, 337; 9 Barb., 630; 2 Blackf., 377; 3 Ind., 306; 2 Johns., 62; 11 Metc., 493.

3. None but "judgment creditors" can attack an assignment as fraudulent or invalid. 1 Manning, (Mich.,) 321; 1 Denio, 190; 2 Edw. Ch., 120; 17 Ala., 685; 28 Me., 232. Robbins was a mere trespasser in seizing the property by force in the hands of Clark, who claimed a right to it, and was in lawful possession of it as assignee; and the order of attachment not only gave Robbins no "color of right," but gave him no semblance of such a color. The *onus* was on him to show a better right

than Clark's, and without showing any right he was permitted to succeed in his defense. The judgment ought to be reversed.

*Hurd & Birnie,* for defendant in error:

1. An action for *conversion* will not lie against a sheriff for goods taken in attachment under regular process, while the goods are so held by him. The goods so held are in the custody of the court, and subject to and awaiting the order of the court. The sheriff is but the hands of the court, and cannot be said to have converted them to his own use and benefit. 28 Barb., 526.

2. The ruling of the court below was correct in excluding the deed of assignment, because it was void upon its face. The reservation to the assignors of a portion of the property assigned is a fraud, and vitiates the whole assignment. Gen. Stat., ch. 43, §§ 1, 2; *Kayser v. Heavenrich,* 5 Kas., 324; Burrill on Assignments, 183, 230; 6 Hill, 438; 15 N. Y., 132; 6 Barb., 471. These goods and merchandise which the assignors saved, excepted, and reserved from the assignment, to the value of $400 each, were not exempt from execution. The words *"stock in trade"* do not apply to or include merchandise in the hands of merchant. Gen. Stat., 474, ch. 38, § 4; *Grimes v. Bryne,* 2 Minn., 90. Our statute was taken literally from the Minnesota statute after it had received judicial interpretation.

3. There was no identification or separation of these goods from the others in the deed of assignment. The description must be definite to convey property by deed. 1 Kas., 259.

4. An assignment is void when the intent to hinder, delay, or defraud creditors appears on its face. 15 Mo., 459; 20 id., 503; 37 id., 500.

The opinion of the court was delivered by

VALENTINE, J.: Several questions are raised in this case, among which is the one whether a certain voluntary assignment made by James Robb and Vincent C. Robb, partners as " Robb Brothers," to Wm. H. Clark, for the benefit of the

creditors of said Robb Brothers is valid. If this question be answered in the negative, as we think it must, such answer will virtually dispose of all the other questions, for then, in whatever way the other questions might be answered the same result would follow—the judgment below would necessarily have to be affirmed.

By said assignment Robb Brothers assigned to Clark a certain store containing boots and shoes, hats and caps, etc., "saving, excepting and reserving from their stock of boots and shoes, hats and caps, goods, wares and merchandise, property to the value of $400 each, which said James Robb and Vincent C. Robb, parties of the first part, *shall elect* to retain as stock in trade under the laws of the state of Kansas exempting certain property from sale on execution or other process." In whatever aspect this assignment may be viewed, it is void. If it be considered that the assignment transferred all the said goods to Clark for the purpose that he should hold them in trust for the Robb Brothers until they should receive $800 worth of the same, and then that he should hold the remainder, if there should be any remainder, in trust for the creditors of the Robb Brothers, such assignment would be void: Gen. Stat., 504, § 1; *Kayser v. Heavenrich*, 5 Kas., 324. In the case of *Kayser v. Heavenrich* the doctrine is laid down broadly that "A voluntary assignment by an insolvent in trust for his creditors, which reserves to the assignor any benefit or advantage out of the property conveyed to the injury of the creditor, renders the assignment void." In this case $800 worth of the very property assigned is reserved for the benefit of the assignors, and every article of the same is subject to their claim until they make their election as provided by the assignment. But if it be considered that the assignment transferred only an interest in the goods to Clark, constituting him a tenant in common with the Robb Brothers, still the assignment would be void. Viewing the assignment in this light, while the interest of the Robb Brothers may be considered to some extent fixed and definite, the interest of Clark is only contingent, and very indefinite and uncertain. Their interest is $400

each, or $800 in the aggregate; his interest may be nothing, or it may be $1,000. There is nothing in the assignment that shows the goods were worth more than $800; and there is nothing to show what they were considered to be worth by the parties. What proportion of the goods were the Robb Brothers to retain? How was it to be determined how many of the goods they should receive for $800? Who was to fix the value of the goods they should elect to retain? None of these questions were definitely answered by the assignment. Perhaps it was all to be left with the Robb Brothers themselves. If so, who would suppose the assignment to be valid? Certainly, whatever interest Clark may have had in the goods, there is no provision in the assignment for separating it from the interest of the Robb Brothers, except by the election of the Robb Brothers themselves. Clark was to have only the remainder, or surplus over, after the Robb Brothers had elected what, articles or portion of the goods they would retain. But suppose they should never elect, or should delay electing for an unreasonable time? What would be Clark's remedy? Would he resort to a long and tedious litigation to compel them to elect? and if so, would an assignment which should put it in the power of the assignor to hinder, delay, and postpone his creditors for such an unreasonable time be valid in law? (Gen. Stat., 504, § 2.) And what other possible remedy would Clark have? If this view of the assignment is the correct one Clark did not become the owner of a single article of all the goods that were assigned to him; nor did he even obtain any absolute interest in a single one of such articles. Suppose that he had taken possession of some such article and said, " Here, I will take this article and dispose of it according to the terms of the assignment, for the benefit of the creditors of Robb Brothers." The Robb Brothers might have answered, " No, we shall elect to retain that article as a portion of our $800 worth of the property assigned "—and thereby they would not only have defeated Clark's claim of title or ownership respecting said article, but they would also have eradicated every vestige of the interest which he may have supposed he had in

the same. Clark's interest in the goods was a contingent and uncertain interest of about nine or ten hundred dollars, as appears from the evidence. After the assignment was made, and before the goods were attached, he sold a few of the goods, and James Robb sold a few, but how many either sold is not shown. When the goods were attached they were worth $1,676.10. The rent of the store room, the taxes, and certain other expenses were however by the terms of the assignment to be paid out of the proceeds of Clark's interest, which would of course reduce the value of Clark's interest to some extent. But thirdly and lastly, if it be considered that the assignment did not transfer any of the property or any interest in any of the property to Clark, then of course the assignment must be void. In any view of the case we think the assignment was void upon its face. For the authorities, see counsels' brief, and also Burrill on Assignments, 179 to 183, and 228 to 232, and cases there cited. The judgment of the court below is affirmed.

All the Justices concurring.