No. 29,003.

THE McCORD-NORTON SHOE COMPANY, *Appellant*, v. KARL E. BROWN, *Defendant;* M. E. GARRISON, Trustee, et al., Garnishees, *Appellees.*

(289 Pac. 417.)

Opinion filed July 5, 1930.

*Gordon A. Badger,* of Eureka, *William Wallace, John W. Newell* and *Paul H. Edgar,* all of Topeka, for the appellant.

*Fred Hinkle,* of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Was the plaintiff, a creditor, entitled to maintain a garnishment proceeding against a trustee to whom an insolvent merchant transferred all of his property for the benefit of creditors that should accept under the provisions of a trust mortgage which he executed?—is the principal question presented for review. The claimed right was denied by the district court, and plaintiff appeals.

It appears that Karl E. Brown, who had been engaged for some time in merchandising, had become insolvent. He had on hand June 18, 1928, a stock of clothing and shoes, a small amount of money, some bills receivable, and he was indebted to a great many creditors, seventy-nine in number, upon open accounts and promissory notes, which together exceeded the value of all his property. On the day named he undertook in good faith to make a prorated division of all his unexempt property and assets among his creditors by executing a document denominated a trust mortgage to M. E. Garrison, trustee, who was manager of the Wichita Association of Credit Men, which is affiliated with the National Association of Credit Men. The following is a copy of the instrument:

### "TRUST MORTGAGE.

"This indenture, made on this 18th day of June, A. D. 1928, between Karl E. Brown of the county of Greenwood and state of Kansas, party of the first part, and M. E. Garrison, trustee, party of the second part, witnesseth:

"That the party of the first part, for the purpose of securing the indebtedness hereinafter referred to, has sold, and by these presents does bargain, sell and convey unto the party of the second part, and his successors, but in trust nevertheless for the use and benefit of such of the creditors of the party of the first part as shall accept hereunder in writing within —— days from this date, the following-described personal and real property situated in the county of Greenwood and state of Kansas, to wit:

"All cash on hand, cash in bank, stock of merchandise, fixtures, accounts and notes receivable, and all other property of every description and wherever located not legally exempt to me under the laws of Kansas.

"Provided always, and these presents are upon the express condition, that if the party of the first part shall pay, or cause to be paid, to party of the second part a sum of money sufficient to satisfy each and all of the debts and obligations of the creditors of party of the first part, who shall accept hereunder as herein provided, when same shall respectively become due and

payable, then this obligation and everything herein contained shall be void and of no effect; otherwise to remain in full force and effect.

"It is agreed that the majority in numbers and amount of the creditors of party of the first part, accepting hereunder, may at a meeting called for that purpose at the office of the adjustment bureau of the Wichita Association of Credit Men, Wichita, Kan., and of which all of such creditors shall have timely notice, elect a committee of three to manage and direct the sale and administration of the property hereinbefore described; such committee shall have full power and authority to do and perform each, every and all things which to them in their discretion may seem for the best interest of all parties concerned, including the power and authority of determining whether to continue the business of the party of the first part, and if so, the terms and conditions therefor, and including also the power and authority to remove party of the second part as trustees and substitute another person, firm or corporation, or other persons, firms or corporations, as such trustee or trustees.

"Such meeting of creditors, for the purpose of electing the committee of three, may be called by party of the second part, or in the event the creditors of party of the first part, including those who have not accepted thereunder, shall exceed twelve in number, by three creditors who have accepted hereunder, and in event such creditors are less than twelve, then by one creditor who has accepted.

"Before entering upon his duties as a member of such committee each person elected thereto shall file with party of the second part notice in writing of his willingness to serve. It is further agreed that until the election and such qualification of such committee that the party of the second part shall have and exercise all of the power and authority herein delegated to such committee.

"It is agreed that if default shall be made in the payment of any sum or sums of money secured hereby when same shall become due and payable, or if party of the second part shall at any time deem himself, or the creditors represented by him, insecure for any cause whatever, and without assigning any reason therefor, it shall then be lawful for him, or his successors, to take and sell all of the personal property hereinbefore described, or so much thereof as to him may seem best and proper under the circumstances, at public auction, or private sale, without notice, and at such time and place and upon such terms as to him may seem proper under the circumstances.

"It is further agreed that after satisfying all sums of money and interest hereby secured, and all actual and necessary costs and expenses incurred by party of the second part, in the sale and administration of the same, including reasonable fees to trustee and attorneys, second party shall return the surplus to the party of the first part.

"It is agreed that at all times after the delivery of these presents party of the second part shall have the possession and control of all of the goods and chattels hereinbefore described.

"It is hereby represented, and this mortgage is accepted upon the strength of such representations, that there are no liens upon the above-described property of any kind or character and that this mortgage is a first lien thereon.

"Any liens of record which would be a preference in bankruptcy:——

"It is further agreed that any creditor of the party of the first part who shall not have accepted hereunder within the period of time . hereinbefore provided for such acceptance may, at the option of the party of the second part, do so at any time prior to the distribution of the proceeds of any sale made hereunder by filing proof of debt satisfactory to the party of the second part.

"It is hereby understood and agreed that each and all of the creditors of the party of the first part who shall accept hereunder do thereby and hereby release and acknowledge as fully paid and satisfied any and all claims and demands filed and proved hereunder.

"In witness whereof, the party of the first part has hereunto set his hand on the date first hereinbefore written.                KARL E. BROWN.

"Executed and delivered in the presence of:

    M. F. WHITLOW.

    FRANK L. WHITE.

        (Acknowledged.)"

The possession of the property was immediately turned over to the trustee, who caused an inventory of the same to be taken, and it was found to consist of $43.15 in cash, merchandise at cost price amounted to $5,906.75, fixtures and equipment appraised at $1,393.75, and accounts receivable, good, bad and otherwise, were valued at the sum of $2,378.05. Brown gave the trustee a complete list of all his creditors when the mortgage was executed, and under date of June 29 the trustee prepared and sent notices to all of the creditors, including the plaintiff, requesting them to file their claims with the trustee, and this notice was sufficient to meet the requirements of the bulk-sales law. He held the property *in statu quo* until July 6, 1928, when he sold the property for a cash consideration of $3,700, and as trustee has received from all sources the sum of $3,803.83. On August 14, 1928, he paid a fifteen per cent (15%) dividend to seventy-eight of the seventy-nine creditors, and after paying taxes and preferred labor claims and other incidental expenses he still had on hand a balance of $1,066.07. The plaintiff did not accept under the trust instrument nor present its claim to the trustee, and afterwards obtained a judgment against Brown for $480.45. The plaintiff caused garnishment summons to be served on M. E. Garrison, the trustee, who answered, admitting that he had $1,066.07 to prorate among the creditors represented by the trustee, but denied that he had any property in his hands belonging to Brown, and pleaded the execution and delivery of the trust mortgage and his action under it. On the trial the trustee in open court made an offer to plaintiff that if it would establish its claim and

accept under the trust mortgage the dividend of fifteen per cent heretofore paid to other creditors would be paid to plaintiff, and that it would share in a *pro rata* part of any other money or assets remaining in the hands of the trustee subject to distribution among creditors.

The court made findings of fact and entered judgment that plaintiff was entitled to receive from Garrison its *pro rata* share of all moneys or property that came into the hands of the trustee, after deducting taxes, labor, bills and reasonable costs and expenses, the same as other creditors had and would receive. It was adjudged that the plaintiff was entitled to participate in the distribution of the estate by compliance with the terms of the trust mortgage against Brown for any balance remaining unpaid, and was not required to surrender or waive its claim or judgment against Brown in the event of participating in the proceeds of the estate.

The nature and effect of this instrument are the principal subjects of controversy. Is it a general assignment for the benefit of creditors, a chattel mortgage or conditional sale? The defendants contend that it will pass muster as a mortgage and also that it is sufficient as an assignment. Plaintiff argues that the instrument is ambiguous and uncertain in its terms and that the conditions and restrictions contained in it are such that it does not fall within either classification and is invalid, at least as far as the plaintiff is concerned. It is a composite of elements, some of which are incongruous. Some of its provisions carry the implication of complete transfer of title, and others that it is a mere security. At the outset the debtor states that "for the purpose of securing the indebtedness" he sells his property on conditions stated, and in a later provision states that if the trustee at any time deems himself insecure he can sell the property, and if there is a surplus remaining after satisfying the claims secured it shall be returned to the debtor. It will be observed that although the instrument purports to sell and transfer the property to a trustee for the purposes named, with immediate possession given, a possession that was actually surrendered to the trustee, there is another provision authorizing the trustee to take possession upon a certain contingency—that is, a feeling of insecurity for any cause whatever. The instrument has more of the features of an assignment for the benefit of creditors than of a mortgage. The defendant contends that while it lacks some of the specified features of an assignment, that these or most of them are directory in character and the omission of them does not render the assign-

ment invalid. The expressed purpose is a transfer in trust for the benefit of creditors. A trustee is named who is given power of final disposition of the property, the proceeds to be devoted to the payment of the creditors' demands, as approved by the trustee. As we have seen, the assignment is only for the benefit of those who accept the conditions prescribed in the instrument and those who will acknowledge full satisfaction in payment of their claims out of the proceeds whether much or little is paid by the trustee. The assignment fails in a number of respects to comply with the statutory requirements. It was not proved nor recorded as the law prescribed. It was not made for the benefit of all the creditors, but only for those who elected to come in and take the benefit of the transfer with all its conditions. It did not provide for the filing of an inventory in the district court and was not filed in or brought under the supervision of that court. There was no compliance with the law providing for the naming of a permanent trustee nor with the requirement that a bond be given by him. No order of the district court was obtained for the sale of the property as required by law, and some other requirements of less importance were not met. These requirements were deemed by the legislature to be essential to a valid assignment, and hence compliance with them is necessary. They were prescribed mainly for the benefit of creditors and in order that their rights should be carefully safeguarded, and hence there should be substantial compliance with them. One defect in the plan adopted by the debtor was that the assignment did not provide for all creditors, but only for those who accepted under its limited provisions, any surplus to be returned to the assignor. An assignment which reserves a right or benefit in the assets to the assignor cannot be upheld. This instrument provides that if there is any surplus remaining after the accepted creditors have been paid it shall be reserved for and returned to the assignor. It also provides that creditors who accept the proceeds of the assignment must acknowledge satisfaction and release all their claims as fully paid. The debtor thus reserves a benefit to himself which necessarily operates to delay and hinder creditors. It has been held that an assignment in trust for creditors which tends to hinder and delay them is void, and also that one in which the debtor reserves to himself any benefit or advantage out of the property undertaken to be conveyed renders the assignment void. (*Kayser v. Heavenrich*, 5 Kan. 324; *Clark v. Robbins*, 8 Kan. 574.) It has been said that—

"An assignment is void if it provides that the trust is to be administered

and closed up under the supervision or control of the creditors who assent to it, for the effect of such a provision is to give a bare majority of the assenting creditors complete control and power to delay the closing of the trust *ad infinitum,* without any redress to creditors who may be injured by the delay." (5 C. J. 1109.)

In the matter of requiring creditors to release the full amount of their claims in order to receive any benefits out of the assets it has been said:

"The rule prevailing in many jurisdictions is that a stipulation or provision in an assignment for the benefit of creditors which exacts a release from creditors to entitle them to share any benefits in the estate of the debtor will render the assignment invalid. This is said to be the common-law rule, and in some jurisdictions statutes have been enacted which invalidate assignments exacting releases." (5 C. J. 1105.)

Creditors cannot be coerced into releasing their debts in such a case. It has been said that the imposing of such conditions is so contrary to public policy and justice as to render an assignment void. (2 R. C. L. 671.) The plaintiff was not required to assent to the conditions prescribed in the assignment made nor required to elect to come in and present his claim within the time fixed by the trustee or at any other time. Those who did assent and shared in the assignment may be precluded from attacking the validity of the assignment, but in the absence of assent by creditors the transfer is void, at least as to those not assenting. (5 C. J. 1059.) There is no presumption either that creditors have assented in the absence of an expression to that effect or of some action indicating consent, and especially where the assignment provides for releases or reservations favorable to the assignor or unfavorable to creditors. (5 C. J. 1064.) While the instrument of assignment provided that all creditors could come in and participate in the proceeds of the property, they were not compelled to make such an election and the trustee nor the assignor nor anyone else could not under such an instrument compel an election. The assignment and transfer we conclude was without validity as to the plaintiff, and it was entitled to any of the remedies for the recovery of its claim which the law affords. The transfer being void, the property held by the trustee was subject to seizure under garnishment process. The trustee answered that he had money in his hands which was the proceeds of the property transferred by the debtor, and his answer shows that it is subject to the payment of plaintiff's judgment.

The judgment is therefore reversed and the cause remanded, with directions to proceed to a judgment in favor of the plaintiff.