MORRIS KAYSER V. SIMON HEAVENRICH, *et al.*

*Error from Leavenworth County.*

1. ASSIGNMENT: WHEN VOID.—A voluntary assignment in trust for creditors, which by its provisions tends to hinder and delay creditors, and not assist them by distribution, is fraudulent and void in law.

2. ID: RESERVATION.—A voluntary assignment by an insolvent, in trust for his creditors, which reserves to the assignor any benefit or advantage out of the property conveyed, to the injury of the creditor, renders the assignment void.*

3. ID.—In this case, the assignment having made provision for the payment of the claim of L., in which, by previous arrangement, the assignor had an interest, it was a secret reservation for the benefit of the assignor, and rendered the assignment void as against those entitled to take advantage thereof.

4. ID: VOID IN PART, VOID IN TOTO.—An assignment that is fraudulent in any of its provisions is void *in toto*, as against those entitled to take advantage of the fraud, upon the principle, that if a contract is fraudulent in part it is void altogether; but the same deed may contain several distinct contracts of conveyance, and then the fact that one contract is fraudulent, will not render void another contract which is legally distinct from it.†

To understand the case so far as is necessary for an

---

*1. STATUTE LAW.—This by virtue of act of February 11, 1859. Comp. L., 569, § 1.

†2. ASSIGNMENT: PREFERRED CREDITORS.—The law allows an assignment for the benefit of

appreciation of the points determined, it will, in addition
to the statement of the facts thereof in the opinion, only
be necessary to insert here the findings of the court be-
low substantially as follows:

That on the 19th day of March, 1855, the firm of J.
Kallman & Co., by Joseph Westenberger, one of the
partners, executed a deed of assignment to the plaintiff,
conveying to him all the firm property of every descrip-
tion, and directing him, as such assignee, to convert such
property into money with all reasonable dispatch, and
after paying the expense of the assignment, to pay either
in full or *pro rata*, as the funds should suffice, certain pre-
ferred creditors, and after they were paid in full, the re-
maining creditors of the firm, either in full or *pro rata*,
as the funds should suffice, and after they were paid in
full, the individual debts of Joseph Westenberger and
Julius Kallman, partners in said firm, either in full or
*pro rata*, as the funds should suffice.

That plaintiff then took possession of said assigned
property, converted the same into money, receiving
therefor the sum of fourteen thousand, three hundred
and eighty-five hundredths ($14,300 85-100) dollars.

That Simpson Loewenthal was one of the preferred
creditors in the sum of twenty-four hundred and forty-
seven ($2,447.00) dollars; that one-half of said sum of
twenty-four hundred and forty-seven ($2,447.00) dollars be-
longed at the time of said assignment to said Joseph Wes-
tenberger, one of the grantors in said deed of assignment.

That the goods and most of the accounts were con-
verted into money, and two hundred ($200.00) dollars of

creditors, but not to put property beyond their reach, and allows the preferring of creditors
therein.

3. Carney, et al., v. Gruber, et al., Supreme Court MSS., reviewed and approved.

4. KNOWLEDGE OF FRAUD.—Neither the assignee nor the creditors are purchasers for value,
and it is not necessary to bring a knowledge of a fraud in the assignment home to them, in order
to render it void.

the amount preferred to Charles Kallman, paid before the service of the garnishment of the several defendants herein or hereinafter set forth.

That all the other creditors set out in said assignment and petition, were creditors in good faith, and knew nothing of the resulting benefit to said Joseph Westenberger, except said Charles Kallman and Simpson Loewenthal.

That all the partners comprising said firm of J. Kallman & Co., afterwards and before the garnishments hererein set forth, ratified said assignment.

And that said Joseph Westenberger so made said deed of assignment with intent to defraud the creditors of the said firm of J. Kallman & Co.

And that on the 19th day of April, 1866, defendants, Simon Heavenrich and Samuel Heavenrich, commenced a civil action against the said Julius Kallman, Joseph Westenberger and Charles Kallman, mentioned in the petition in this case, in this court, to recover the sum of seven thousand eight hundred and fifteen ($7,815.92) dollars and ninety-two cents, for goods, wares, merchandise and chattels, by said Simon Heavenrich and Samuel Heavenrich, before the first day of March, A. D. 1866, sold and delivered to said Julius Kallman, Joseph Westenberger and Charles Kallman, as the persons comprising said firm of J. Kallman & Co.; and that on the said 9th day of April, A. D. 1866, said Simon Heavenrich and Samuel Heavenrich caused affidavits for an attachment and garnishment to be filed in this said action, and that on that day such an order of attachment, as is mentioned in the said answer herein of said Simon Heavenrich and Samuel Heavenrich, was issued in said action, directed to the sheriff of the county of Leavenworth to execute.

And that on said 9th day of April, A. D. 1866, an agent of said Simon Heavenrich and Samuel Heaven-

rich, in said action, made such an oath, in writing, as in their answer is mentioned. And that on that day the sheriff of said county received said order of attachment, and executed the same by delivering a copy thereof to the plaintiff in this suit, Morris Kayser, with a written notice that he appear in said court at the return of said order of attachment, and answer as a garnishee in the said action, that day commenced as aforesaid.

And that said Morris Kayser afterwards appeared in said action as so notified and, as such garnishee, made and filed in said action, such an answer as is mentioned and set forth in the aforesaid answer herein, of said Simon Heavenrich and Samuel Heavenrich.

And that afterwards, at the November term, A. D. 1866, of this court, and on the 19th day of December, A. D. 1866, in said action in this court, said Simon Heavenrich and Samuel Heavenrich did, by the consideration of this court, recover a judgment against said Julius Kallman, Joseph Westenberger and Charles Kallman, for the aforesaid sum of seven thousand eight hundred and fifteen dollars and ninety-two cents, ($7,815.92,) and their costs in that action expended, which judgment still remains in full force, wholly unsatisfied, and that there is now due to said Simon Heavenrich and Samuel Heavenrich on said judgment from said Julius Kallman, Joseph Westenberger and Charles Kallman, as such partners, the sum of eight thousand six hundred and thirteen dollars and seventy-seven cents, ($8,613.77,) and also the costs last aforesaid."

Similar findings are made as to other judgment creditors of Kallman & Co. Following these is a finding of law that the assignment was "illegal and void." Judgment accordingly follows, to reverse which this petition in error is filed.

*J. L. Pendery, Hurd & Stillings*, and *Sherry & Helm, for plainiff in error*, submitted:

1. The finding of the court shows that none of the creditors knew of the fact claimed to render the instrument void, except Loewenthal and Kallman, and that the assignee knew nothing of it.

Loewenthal could claim, under this agreement, no right except what balance, if any, should be due him on final settlement with Westenberger. 11 *Barb.*, 140; 16 *Ill.*, 457; 11 *Maine*, 196.

2. *a*) The property was given for the benefit of all the creditors. If void as to one, that would not render it void as to *bona fide* creditors. [30 *Miss.*, 359; 21 *U. S. Dig.*, 65, § 91; 18 *id.*, 78, § 73; 6 *Ind.*, 176; 23 *Mass.*, 273; 3 *Wis.*, 367; 9 *Pick.*, 176; *Billups v. Sears*, 5 *Grat.*, 31; 11 *Wheat.*, 78; 6 *Ind.*, 176; 24 *Md.*, 182, 183; 8 *Walton*, 31; 27 *Ill.*, 36; 9 *Pick.*, 176; 6 *Taunt.*, 359; 20 *Ill.*, 461; *Burrill on Assign.*, 442.] This doctrine is not contradicted by any express adjudication. Defendant's authorities are, where the objections had been made to the face of the assignment, and therefore which conveys notice.

*b*) The several trusts are each distinct. *Oriental Bank v. Haskins;* 3 *Metc.*, 337; *Cutter v. Dickenson*, 8 *Pick.*, 386; 19 *Mo.*, 4.

*c*) These authorities are seemingly adverse to this view at first sight, but they will be found to be in all cases where objections have been made to the assignment on its face, and therefore giving notice to all parties.

3. An assignment providing for payment of debts, and giving preference, and providing that no costs shall be paid, and providing for payment of balance to assignor, is not void.

*a)* An assignment is a conveyance for a valuable consideration. *Darling v. Rogers,* 22 *Wend.,* 483.

*b)* Fraud, to effect the assignment, must have been known to and participated in by the assignee or creditors. *Foster v. Hall,* 12 *Pick.,* 90; *Bridge v. Eggleston,* 14 *Mass.,* 249; *Pennell v. Hart,* 30 *Mo.,* 561; *Brooks v. Marbury,* 11 *Wheat.,* 78; 8 *Maine,* 414; 6 *Taunt.,* 359; *Hollister v. Loud,* 2 *Mich.,* 309.

4. Our statute (chapter fourteen) provides for assignee giving bond. Chapter two hundred and nine, sections ten, eleven and twelve, give the court power, on application of the trustee for renewal, or otherwise, to secure the rights of parties. It is thus apparent that our legislature has not left the power of assignment as it was at common law. On this view of the case we refer to Floyd & Co. v. Smith, 9 O. St., 546; 6 Taunt., 359; 20 Ill., 460, 461; 27 Md., —; 40 Mo.

5. The property had been converted into money. It was the right of the other creditors to enforce the assignment against the assignee. He cannot be made liable as assignee to them, and as garnishee to other parties at the same time for the same money. 11 *Cush.,* 499.

6. Our statute is different from that of New York, and other states. It provides no penalty for conveyance to hinder or delay, but for cases where the conveyance is made or obtained to defraud creditors. The intention of the legislature seems to have been that both grantor and grantee should participate in the fraud.

7. The evidence fails to show actual intent to defraud; shows that a copartnership existed between neither of the assignors and the assignee.

*Clough & Wheat, for defendants in error,* submitted:

1. The assignors transferred too much property.

2. The assignment was, in part, in trust for one of the assignors, and therefore void. *Comp. Laws*, 568, § 1.

3. The assignment was made to defraud creditors, and therefore void. *Id.*, 568, 569, § 2.

4. Said deed was made for such use, and with such intent; it is not to be considered of any. force or effect whatever. *Burrill on Assign.*, 442, 443, *and note et seq.*, 2d Ed.; 21 *N. Y.*, 587; 5 *Cow.*, 547, 580; 2 *Comst.*, 365; 4 *id.*, 211, 214; 2 *Pick.*, 129; 2 *Mich.*, 445, 460; 1 *Carter, Ind.*, 405, 410; 17 *N. Y.*, 25, 27; 16 *N. Y.*, 484; 26 *Verm.*, 462; 6 *Hill*, 438; 9 *Cow.*, 73, 85; 11 *Wend.*, 187; 2 *B. Monroe*, 239; 18 *Barb.*, 272; 24 *Barb.*, 105; 2 *Sanf.*, 594; 35 *Verm.*, 593; 7 *Paige*, 615; 9 *Barb.*, 257; 7 *How.*, 276; 12 *Mich.*, 58; 40 *Mo.*, 205, 206; 37 *id.*, 515, 516; 1 *Am. Lead. Cases*, 97 *et seq.*, 3d Ed.; see also *same*, 101.

5. If an assignment, when made with a fraudulent intent, or to the use in part of some person whereby, under the statute it is rendered void, is not void in toto, but only as to such use, then the conveyance by the deed is not therefore void (as the statute says it is) but in practical effect the court makes a new assignment, merely considering as a nullity the said intent and fraudulent use thus shown, and rewarding the creditor exposing the fraud, with the knowledge that, because of his proper diligence and just exposure of an attempted fraud, the deed, made with such fraudulent intent, has become by a judicial addition to the statute of frauds, as good and valid to convey the property and to hinder and prevent him from collecting his debt out of the property thereby conveyed, as though said conveyance had been made in good faith, and was not by the terms of the statute void. If the deed was void as to the defendants in error (they being creditors of J. Kallman & Co.) we submit their

garnishee process on plaintiff reached the moneys he held (the deed being void) for the use of the creditors of J. Kallman & Co. The assignment to be valid must be *bona fide*. *Burrill on Assign.*, 2d *Ed.*, *and notes* 359 *and cases there cited*; 24 *Ill.*, 322; 1 *Amer. Lead. Cases*, 96 *et seq.*, 3d *Ed.*

6. Neither the assignee nor the creditors whom he represents are *bona fide* purchasers for a valuable consideration, etc., and the fraudulent intent of assignor is enough to defeat the assignment, though the assignee be insolvent. 12 *Mich.*, 61; *Burrill on Assign*, 438, 439.

7. It cannot be successfully claimed that J. Kallman & Co., and each member of that firm, (Westenberger, when he made the deed, and his co-partners when they ratified it,) did not intend what they did. 5 *Cow.*, 573; 17 *N. Y.*, 21; 31 *Mo.*, 69; *Affirmed* 40 *id.*, 232, 233; 2 *Seld.*, 324.

8. If such fraudulent intent existed, it is entirely immaterial what consideration supported the deed. 40 *Mo.*, 229, 232, 233; 13 *Wis.*, 460; 37 *Mo.*, 515, 516.

9. It is submitted that the evidence is abundant to show such fraudulent intent and use.

10. As we understand it to have been claimed on the trial of this cause in the district court, so it may be claimed now, by plaintiff in error, that the decision of this court in the case of *Carney & Stevens v. E. H. Gruber & Co.*, is conclusive that neither the interest of Julius Kallman in the Charles Kallman preference, nor the interest of Westenberger in the $2,400 preferred in favor of Loewenthal, vitiates the assignment. If such claim shall be made, in answer thereto in part, we say that the two deeds of assignment in these two cases are very different—in this case the amounts specified as preferred, are said to be debts, and are to be paid as such, in their or

der, by the assignee, as preferred, without leaving it to be afterwards determined, as in that case, whether they were debts or not—whilst in that case it was to be afterwards determined who were creditors of the firm of E. H. Gruber & Co., the assignors in that case having merely expressed their belief on that point—and in that case, [*Carney & Stevens v. E. H. Gruber & Co.,*] the debts of E. H. Gruber & Co., both firm and individual, were to be paid in full before either of the partners were to have anything returned to them. We submit that the cases in 11 Barbour, 140; 16 Illinois, 457; and 11 Maine [2 *Fairfield,*] 196, cited for defendants in error on the hearing of that case, are not in point in relation to that matter in this case—the rule of law enunciated in those cases not being applicable to a deed in the terms of the one now before the court. But whether we are correct in this or not, we deem immaterial, as there is a finding, supported by ample evidence, that the deed was made as a matter of fact, with a fraudulent intent to defraud the creditors of J. Kallman & Co., the assignors.

11. If Westenberger, in legal effect, alone made the deed of assignment, the same not being the act of the firm, it was void for that reason [5 *Paige*, 30; 5 *Mo.*, 465; 30 *N. Y.*, 334; 8 *Watts & Serg.*, 63;] and any subsequent ratification thereof by the other members of the firm, adopted the whole act as done, fraud and all, and made it, by such ratification, their act, if it was not before, if such ratification could have any effect whatever on the deed. *Chitty on Contr.*, 198, note 4, [*9th Am. Ed.*, 214;] 8 *How., U. S.*, 134, 154; 1 *Hill*, 317, 318.

12. And such ratification, if operative on the assignment at all, was equivalent to previous authority to Westenberger to make the assignment, with such fraudulent intent. 15 *N. Y.*, 577; 12 *Barb.*, 27; 19 *Pick.*, 300.

13. When a party ratifies and adopts an act, he adopts it as it was done, as an entirety—for an act cannot be adopted in part, and rejected in part. *Chitty on Contr.* 202, *Note* 2, [*9th Am. Ed.* ;] 10 *Paige,* 127 ; 5 *Hill,* 107–113, 137 ; 12 *N. H.,* 205 ; 12 *Johns.,* 304 ; 37 *Mo.,* 515, 516 ; 3 *Hill,* 552 ; 3 *Pick.,* 505 ; 8 *id.,* 56 ; 19 *id.,* 300.

14. From the findings it appears that the ratification by the other partners was after the assigned property had been converted into money by the assignee—now if this ratification was after the acceptance of the assignment by the assignee (and we see it must have been) it did not confer any additional title or authority over the assigned property or the proceeds thereof, upon the assignee, or render his title any better than it was before. 9 *N. Y.,* 142 ; 6 *Abb., Dig.,* 59, § 91 ; 6 *Barb.,* 91 ; 7 *id.,* 466 ; 10 *Paige,* 210.

15. Whether Loewenthal was or was not a dormant member of that firm (J. Kallman & Co.) is immaterial, so far as the legal effect of the defendants' suits against the assigned property and the proceeds thereof is concerned. [30 *N. Y.,* 374 ; 4 *Scam., Ill.,* 438, 439.] Assignments with preferences, especially such preferences as those to Loewenthal and Charles Kallman, ought not to be favored. 36 *Barb.,* 622 ; 6 *Abb's Dig.,* 50, 51, § 1 ; 23 *How. Pr.,* 175.

16. If the assignment was void, then plaintiff is liable to defendants in error as garnishee, for the proceeds of what he received thereunder. 12 *Wis.,* 352, 362, 363 ; 20 *id.,* 311, 319 ; 34 *Mo.,* 444 ; 29 *Ill.,* 10 ; 3 *Scam.,* 417 ; 22 *Iowa,* 266, 268 ; 35 *Verm.,* 89 ; *Drake on Attach.,* § 458, *3d Ed.*; 44 *N. H.,* 182 ; 16 *Mass.,* 318, 320 ; 11 *Pick.,* 298 ; 17 *Mass.,* 552, 558.

17. It is unimportant whether the conclusions of *law* are full enough to support the judgment or not, if

the findings of *fact* are sufficient.   § 559, *Code* 1868, *last paragraph of section.*

18.   The exceptions to the evidence, when general, and to the findings (which last exception is general) are too indefinite to avail plaintiff in error.   2 *Kas.* 199; 11 *N. Y.*, 416, 420; 13 *id.*, 341; 6 *id.*, 233; 9 *Ind.*, 528; 7 *id.*, 290, 590, 679; 5 *id.*, 145; 21 *Wis.*, 430; 16 *id.*, 273; 5 *Den.*, 213; 33 *N. Y.*, 83; 11 *Ind.*, 494; 14 *id.*, 417; 8 *id.*, 491; 7 *id.*, 76; 8 *Blackf.*, 277; 18 *Wis.*, 528.

It appears from the findings of the court that there were other creditors of J. Kallman & Co., who are not made parties to this action in error, nor are any of the members of the firm of J. Kallman & Co., made parties, although such creditors, and the members of the firm of J. Kallman & Co. were made defendants in the district court, we submit, therefore, that this court has not jurisdiction of this action.   13 *O. S.*, 568, 569; 17 *How.*, 130; § 3, *Ch.* 5; 1 *Daniel's Ch. Pl. and Pr.*, 3d *Ed.*, *especially p.* 285, 293; 2 *Bro. Ch. R.*, 276; 2 *McLean*, 267, 305, 307; 7 *Paige*, 544; 14 *O. S.*, 287–292; 23 *Ill.*, 379.

*By the Court*, KINGMAN, C. J.

The plaintiff in error is assignee of Kallman & Co., and as such assignee had in his hands the funds realized from the property and debts due said Kallman & Co. when he was garnished by the defendants in error.   He therefore filed his petition in the district court, setting up the deed of trust and his actions thereunder, making the defendants in error and the other creditors of Kallman & Co. parties, and asking the court to direct him what disposition to make of the funds.   The defendants in error answered, setting up their claims and alleging

that said deed of assignment was made with the intent to defraud the creditors of Kallman & Co., and was void; and asked that they be allowed the amount of their several judgments against Kallman & Co.

The cause was tried by the court, and a judgment was rendered as prayed for by the defendants. The court made special findings in the case, from which it appears that on the 19th day of March, 1866, the firm of J. Kallman & Co. made an assignment to plaintiff of certain property to pay certain preferred and other debts of the firm; that the plaintiff had so far executed the trust that he had in his hands the sum of $14,300.85, received from the property and debts due the firm of Kallman & Co.; that the assignment was made by Joseph Westenberger, one of the firm of Kallman & Co., and that one of the preferred creditors was Simpson Loewenthal, and that said Westenberger was interested in the claim of Loewenthal, being an equal partner therein; and that to the extent of his part of the amount for which he preferred Simpson Loewenthal the assignment was for his own benefit and void, and that the deed was made with intent to defraud the creditors of the firm of Kallman & Co. The evidence, which makes part of a very voluminous record, fully sustains the findings of the court as to the facts; and the one material question for consideration is whether the facts, all being true, the conclusion of the court that the instrument of assignment is void is a just conclusion of law.

It is admitted in argument, and is apparent from the record, that neither the assignee nor the creditors, except Loewenthal and Westenberger, had knowledge of the fact that the debt to Loewenthal was for the benefit of Westenberger. On the part of the plaintiff in error it is claimed that this trust for the benefit of the assignor does not

vitiate the assignment as to other creditors who were not
parties or privies to it; that if void as to Loewenthal it is
not thereby rendered void as to the other creditors, whose
rights under the assignment will be protected and en-
forced by the court.

ASSIGNMENT:
Secret Trust.
The assignment is not for the benefit of cred-
itors generally, but is in trust for the payment
of certain specific sums, in full, to certain parties named
in the instrument, who are declared to be creditors, and
the residue of the proceeds of the property assigned is
to pay certain other amounts, alleged to be due to certain
other named parties who are alleged to be creditors; and
if neither class can be paid in full, then the claims of
such class are to be paid *pro rata*. In the first of these
classes is the amount to be paid Loewenthal, and one-half
of this amount is of right the property of one of the as-
signors, and is a secret trust for his benefit. Does this
trust for the benefit of one of the assignors vitiate the
whole deed of assignment? Section one of chapter 102 of
the compiled laws, declares that "all gifts and convey-
ances of goods and chattels made in trust to the use of
the person or persons making the same, shall be and
are hereby declared to be void and of no effect." It is
not denied that a part of the trust for which this assign-
ment was made was for the benefit of the maker thereof,
and was so far void, but it is contended that it is only
void as to such case, and that the property assigned must
be distributed, *pro rata*, among the other persons named
as creditors, as directed by the instrument of assignment.
The assignee could not, of his own motion, pretermit
one who, by the express terms of the trust, was to receive
a certain stipulated sum; for that would be a palpable
violation of the conditions upon which he received the
property. Nor could a court so order it, unless with the

consent of the innocent parties interested in the fund, for
that would be the making of a new instrument by the
court; every part of the assigned property was held in
trust for the payment of this claim for the benefit of one
of the assignors.  Had a certain definite portion of the
property been assigned to pay this particular claim, and
the other portions of the estate been designated to pay
the other claims, it would have presented a different
question, and according to some of the authorities, the
void part of the assignment might have been so held
without tainting the whole instrument; but in this case
the whole conveyance was for the payment of this claim
for the maker's use.

It can make no difference that this claim was but
small compared with the general indebtedness.  It was
an essential part of the whole trust, pervading every part,
as much as though it constituted nineteen-twentieths of
the trust estate.  The conveyance was in trust for the
maker's use, and it cannot make any difference that
others were interested in the trust when any person, hav-
ing a right so to do, contests the validity of the convey-
ance.  It comes within the provisions of the section of
the statute above quoted, and must be held void.

ID: DELAYING
Creditors.
The court further found that the conveyance
was made with the intent to defraud the cred-
itors of said firm of Kallman & Co., and the evidence to
support this finding is mainly the fact of the secret trust
in the deed for the benefit of one of the assignors, and
we think this is sufficient to justify the finding.  To the
extent of Loewenthal's claim, the creditor's were injured
by the deed. . The property of the assignors, to which the
creditors could look for the payment of their claims was
diminished over $2,400 to pay this claim, and only by
litigation could the illegal nature of the trust be ascer-

tained. So far, then, as this sum was concerned, the creditors would be defrauded of their rights. The law allows a debtor to dispose of his property for the benefit of his creditors, making such preferences as he chooses, as to who shall be first paid; but it will not tolerate him in an assignment of his property in such a way and manner that the creditors are not to receive the benefit of it. The very nature of the trust causes more or less necessary delay in the creditors obtaining what is due them; but when the object is distribution of his estate among his creditors, the act is upheld, because of the object sought to be obtained. But when the debtor makes his assignment, and thereby places his property beyond the reach of his creditors, and in the conveyance reserves a benefit to himself to the injury of the rights of the creditors, he thereby commits a fraud upon them. " It is a settled principle that a reservation to the grantor, or his family, or any one not a creditor of any profit or benefit out of the property conveyed, or of a credit on account of any part of it, is a fraud in law, and voids the whole assignment," is the language of one writer after an examination of the whole of the authorities on the subject, and is also the conclusion to which we have come from the sáme source. The authorities are referred to in the brief of defendants; nor do we think the authorities referred to by the plaintiff, when carefully considered, disturb this fundamental doctrine. These decisions are made upon special and peculiar cases, which are more properly exceptional as to the facts, than as to the principles established. An examination and analysis of them would be a treatise on this branch of the law. We only wish it understood that we have examined them, and are not at all shaken in our convictions.

CARNEY, ET AL. v. We are referred to the case of Carney and Ste-
Gruber, et al.,
reviewed. vens against Gruber & Co., in which this court
sustained the deed of assignment, although the schedule
in that case contained as creditors the name of a firm,
one of whom was one of the assignors in that case. The
deeds in the two cases are materially different. In this
case the amounts specified as preferred are said to be
debts, and are to be paid as such in their order, without
leaving it to be ascertained whether the sums mentioned
are debts or not; whilst, in the case referred, to the deed
of assignment was to the creditors generally, and after
the making and recording the deed of assignment and
the assumption of the trust by the assignee, a schedule
was filed containing what WAS BELIEVED to be a correct
list of the creditors and the amounts respectively due
them. When the schedule was filed it was impossible
for the assignor, by any act of his, to affect the validity
of the assignment.

The schedule was filed to assist the assignee in the
discharge of his duties. It professed to give only what
was *believed* a correct list of the creditors, and left the
assignee full authority and power to ascertain what were
the legal debts, with no authority to pay any but legal
claims; and by the deed the debts of Gruber & Co., both
firm and individual, were to be paid before either of the
assignors were to have anything returned to them. So
that, even had it been in the power of the assignor to
change the terms of the deed by a subsequently filed
schedule, still no payment could be made to either
partner till all the debts were paid. The two cases are
so unlike, in this particular, as to fairly illustrate what
may appear to be a conflict in the decisions on the subject
of assignments, but which, in reality, is but the applica-
tion of well settled principles to different states of fact.

KNOWLEDGE OF
Fraud in As-
signee.

Again it is contended that the fraud, to effect the assignment, must have been known to, and participated in by the assignee or creditors. Such a doctrine would, in most cases, entirely preclude the creditors from setting up fraud in an assignment. The conveyance is usually made without consultation with the creditors, and the assignee would hardly be consulted about, or advised of any illegal or fraudulent practices on the part of the failing debtor. Neither the assignee nor the creditors are purchasers for a valuable consideration, and it is not necessary that notice of the fraud should be brought home to them to render the conveyance void. [12 *Mich.*, 61; *Burrill on Assign.*, 438, 439.] The property had been converted into money; it was in the hands of the plaintiff in error; the conveyance by which he held it was fraudulent and void, so that the funds were in his possession and subject to the proceedings instituted by the defendants in error, to make them available for the payment of their claims. The judgment must be affirmed.

All the justices concurring.