No. 36,060

June E. Herd, *Appellee,* v. Stanley N. Chambers, *Defendant,* and Wheeler-Kelly-Hagny Trust Company (Garnishee), *Appellant.*

(149 P. 2d 583)

Opinion filed June 10, 1944.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns* and *Wilbur H. Jones,* both of Wichita, were on the briefs for the appellant.

*W. D. Jochems,* of Wichita, argued the cause, and *J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems,* all of Wichita, and *J. Francis O'Sullivan,* of Kansas City, Mo., were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This appeal involves the result of garnishment proceedings in a case, which so far as it concerns liability of Stanley N. Chambers, the principal defendant, was determined in *Herd v. Chambers,* 155 Kan. 55, 122 P. 2d 734, where a default judgment as to such defendant was reinstated, subject to determination of liability of the garnishee defendant Wheeler-Kelly-Hagny Trust Company in the garnishment action on the issue there framed and undisposed of by the garnishment pleadings. The facts on which such judgment was based may be found in the foregoing opinion and will not be here restated except as they are pertinent to the trial of the garnishment issue.

On the trial of the garnishment action in district court the sole issue between plaintiff and the defendant company, as joined by

their affidavits which constituted the pleadings in that proceeding, was whether the company had property in its possession or under its control belonging to defendant Chambers or whether it was indebted to him. After a trial on that issue, the district court found that on the date of service of the garnishment summons the company had in its hands under the terms of a void trust agreement executed by Chambers, a sum far in excess of the judgment for $25,000 rendered in *Herd v. Chambers*, supra, which was subject to garnishment, and rendered judgment in favor of the plaintiff and against the garnishee for that amount with interest and attorney fees, from which judgment the defendant company appeals.

Many questions are raised and discussed by the able and distinguished counsel for both appellant and appellee but a careful examination of the briefs as well as the record readily discloses that the arguments advanced in support of most of them are premised upon the assumption the construction to be given the trust instrument is that placed upon it by the respective parties. Since it is apparent, if in fact it is not conceded by all concerned, the determination of the principal issue necessitates a judicial interpretation of the trust agreement and that once it is construed many subordinate matters urged and relied upon cease to be of importance, we turn first to consideration of that subject.

Unimportant for our purpose, at least for the moment, are any questions pertaining to the motive actuating the execution of the instrument, the conditions under which it was executed, or the circumstances under which the corpus of the estate created by its terms was acquired by and delivered into the hands of the appellant. What we are concerned with is the fact the agreement, on which appellee bases its contention the appellant had money in its possession belonging to Chambers, was duly executed, that pursuant to its provisions funds far in excess of the amount of appellee's judgment were turned over to the appellant and that such funds remained and were in its possession and under its control on the date of the service of garnishment process. With this conceded, as it is, an interpretation of the terms and conditions of the instrument itself will be determinative of the issue of whether funds belonging to the trust estate were subject to garnishment.

The agreement was quite lengthy. It will be necessary to quote some of its terms and provisions verbatim and suffice to relate the substance of others. Its prelude states:

"This agreement, made and entered into this 27th day of August, 1931, by and between Stanley N. Chambers, of Wichita, Kansas, (hereinafter generally called the 'Grantor'), and The Wheeler Kelly Hagny Trust Company, a Kansas corporation having its principal place of business in the City of Wichita in said State (hereinafter called the 'Trustee'),

"Witnesseth:

"That the Grantor has contemporaneously herewith delivered to the Trustee cash in the amount of Fifty-three Thousand Two Hundred Eighty-three and 01/100 Dollars ($53,283.01); that the Grantor intends by subsequent additions to the trust to increase the value of the corpus of the estate to a sum of about One Hundred Twenty-five Thousand Dollars ($125,000.00); that such corpus, together with any and all securities later deposited hereunder by the Grantor or purchased by the Trustee with cash held hereunder, shall be held in trust for the use and benefit of the Grantor upon the conditions and for the time and purpose hereinafter set forth, to wit:"

Following the prelude is article 1, which reads:

"The Trustee shall pay and distribute from income on hand in installments convenient to the Grantor, beginning as soon as practicable after the date of this Agreement, the entire net annual income of the trust estate to Stanley N. Chambers, such payments to continue so long as he shall live. After the death of Stanley N. Chambers, the Trustee shall in like manner pay the net income to Myrtle L. Chambers, wife of the Grantor, if she be living and shall continue such payments until her death. After the death of Myrtle L. Chambers, if the Grantor predeceases her, the Trustee shall make distribution of the principal and all earnings in the hands of said Trustee, in accordance with the Last Will and Testament of said Myrtle L. Chambers, and upon the death of the Grantor, if Myrtle L. Chambers predeceases him, the Trustee shall make distribution of the principal and all accumulated income in the hands of said Trustee, in accordance with the Last Will and Testament of the said Grantor. If the Grantor and his wife die in a common accident or under other circumstances giving rise to question as to which shall have died first, it shall be conclusively presumed, for the purpose of distribution of the Estate hereunder, that the Grantor survived his wife, Myrtle L. Chambers. If no valid Last Will and Testament be left disposing of the trust estate herein by the survivor of Stanley N. Chambers and Myrtle L. Chambers, or if there be no such will exhibited to the Trustee and filed for probate within six months after the date of the death of the survivor of the Grantor and his wife, the Trustee shall, unless otherwise directed by later supplemental agreements which may from time to time be entered into between the Grantor and the Trustee amending the following distribution clauses hereunder, divide the trust estate hereunder into four equal parts to be held and distributed as follows: . . . [Here follows instructions with respect to distribution on the contingencies just referred to] . . . Notwithstanding the provisions hereinabove made, it is understood and agreed by the parties hereunder that the Grantor may, from time to time by supplemental writings delivered to the Trustee during the Grantor's lifetime direct that distribution of the estate, either principal or income be made to other persons or corporations designated in such supple-

mental writings. It is further agreed that such directions may be changed as frequently as the Grantor elects, the only limitation on such reserved power being that the Grantor shall not execute any instrument in the future restricting or limiting the rights herein reserved to the Grantor. It is understood by and between the parties hereto that E. P. Villepigue, of Wichita, Kansas, shall be and is the duly authorized attorney of the Grantor and/or the Grantor's wife, during the life of the said E. P. Villepigue, and upon the death of the said E. P. Villepigue the Grantor and/or his wife is to have the sole power to choose his successor."

Ensuing terms and conditions of the agreement may be stated in substance as follows: Article 2 contains twenty-one clauses dealing with the investment of the trust estate by the trustee and authorizing action by it in that respect subject to disapproval of the grantor or by his attorney.

Provisions of article 3 relate to compensation to be paid the trustee.

Terms of article 4 prohibit the making of income payments until their accrual from investment of the principal, incumbrances of any part of the principal or income, and its subjection to claims of creditors of any beneficiary.

In article 5 the grantor is authorized to withdraw principal up to 20 percent of that originally deposited plus 20 percent of principal accretions or gains realized from the management of the corpus of the estate.

Further payments from the principal in such amounts as they may deem necessary are authorized by article 6 in the event the trustee and the grantor's attorney determine income from the principal is insufficient for the general welfare and best advantage of the grantor and/or the grantor's wife.

Articles 7 and 8 relate to appointment of a successor to the trustee in the event that action is necessary.

Article 9 permits removal of the trustee by the grantor (and after his death his wife) and the naming of a new trustee in the event management of the trust estate by the trustee results in losses aggregating an amount equal to 5 percent of the value of the principal.

The final article, No. 10, directs the trustee to make annual reports to the grantor and/or his wife, and their attorney and authorizes inspection by them at all times of the book records of the trustee.

Subsequent to the execution of the original trust agreement Chambers delivered to the trustee, garnishee herein, a supplemental writing dated March 9, 1932, which in part reads:

"To The Wheeler Kelly Hagny Trust Company, Wichita, Kansas:

"TAKE NOTICE that, pursuant to the provisions of a certain trust agreement, in writing, made and entered into the 27th day of August, 1930, by and between Stanley N. Chambers, of Wichita, Kansas (thereinafter generally called the 'Grantor') and The Wheeler Kelly Hagny Trust Company, a Kansas corporation, having its principal place of business in the city of Wichita in said State (thereinafter called the 'Trustee'), and particularly Article 1 thereof, the undersigned, the said Stanley N. Chambers, does hereby cancel, terminate and hold for naught, all of the terms and provisions of said paragraph wherein and whereby the said Grantor provides for the division of the trust estate created by said trust agreement into four (4) equal parts to be held and distributed after the death of the survivor of the Grantor and his wife as follows:  .  .  .  [Here appear the provisions in the original instrument relating to distribution of the trust estate in event of the happening of any of the contingencies referred to in the third paragraph of article 1 thereof.]".

Further provisions of this supplemental agreement read:

"TAKE FURTHER NOTICE that the foregoing provisions are, and each of them is, deemed struck out from said trust agreement pursuant to the authority so to do reserved to said Grantor in said Trust agreement, and that this instrument is, and shall be deemed to be a supplemental writing delivered to the Trustee during the Grantor's lifetime directing a distribution of said estate as to principal and income within the terms and provisions of said trust agreement, and, in particular, paragraph 1 thereof.

"TAKE FURTHER NOTICE that in lieu of the said provisions hereby struck out from said trust agreement, the said Grantor hereby directs that the distribution of the said estate be made to the estate of him, the said Stanley N. Chambers, to be disposed of in accordance with the Last Will and Testament, if any, of the said Stanley N. Chambers, or in the event that he shall die intestate, then according to the statutes of the state of his domicile, or of the state having jurisdiction of said trust estate, as the case may be, relating to intestacy.

"TAKE FURTHER NOTICE that nothing herein contained shall be deemed to alter in any way any term or provision of said trust agreement relating to Myrtle L. Chambers, wife of the said Stanley N. Chambers, and/or to any right, title, benefit, use or interest of the said Myrtle L. Chambers in and to the trust estate created by said trust agreement.

"TAKE FURTHER NOTICE that the undersigned in executing this agreement and doing the acts therein recited is not deemed to have exhausted or impaired any right reserved him under said paragraph 1 of said trust agreement to direct the distribution of the estate, either principal or income, or to amend the distribution clauses in said paragraph contained by further instruments, but reserves to himself all such rights with full vigor and force and effect."

Mindful of the rule (65 C. J. 500, § 248; Restatement, Trusts, § 38; 1 Scott on Trusts, § 38; 26 R. C. L. 1254, 1256, §§ 101, 103; *Bayless v. Wheeler-Kelly-Hagny Trust Co.,* 153 Kan. 81, 109 P. 2d 108) that in the construction of a trust the purpose and intent of

the creator must be determined from the terms of the instrument itself, if it be plain and unambiguous, we have carefully examined the language of the instrument under consideration, and to which we have heretofore made reference, for the purpose of determining whether any such ambiguity exists in clauses pertaining to use, disposition and control of the trust estate as to require a consideration of the evidence in order to properly construe them. We do not think so. Whatever other purposes the grantor may have had in view in executing the agreement in question one of its provisions clearly indicates his intention in those respects. We refer to the next to the last paragraph of article 1 (referred to in the supplemental writing as paragraph 1) which for the sake of emphasis we requote:

"Notwithstanding the provisions hereinabove made, it is understood and agreed by the parties hereunder that the Grantor may, from time to time by supplemental writings delivered to the Trustee during the Grantor's lifetime direct that distribution of the estate, either principal or income, be made to other persons or corporations designated in such supplemental writings. It is further agreed that such directions may be changed as frequently as the Grantor elects, the only limitation on such reserved power being that the Grantor shall not execute any instrument in the future restricting or limiting the rights herein reserved to the Grantor."

The language just repeated clearly and succinctly evidences an intent and purpose on the part of the grantor to retain full and complete control over the trust estate, both as to principal and income. In that language there is no ambiguity or uncertainty which would permit this court to go beyond the four corners of the instrument in determining the intention, neither is there room or cause for doubt as to the construction which must be placed upon it. It is our view the words speak for themselves. A statement that the settlor of a trust estate may from time to time direct distribution of that estate to other persons or corporations means just that and nothing less. And, included therein, as we view it, is the right and power to direct that the entire estate, both principal and interest be turned back to him, thereby abrogating entirely the provisions of the original instrument. If there be doubt as to the soundness of this view we direct attention to the last paragraph of the supplemental writing, heretofore quoted, where in no uncertain terms the grantor clearly demonstrated the construction he placed upon the original instrument, and reëmphasized his intent and purpose to retain full use and control under its terms. Indeed, the trustee itself recognized that construction by accepting an instrument reserving those

rights in clear and concise terms. True enough, as suggested, other provisions with respect to management and control of the estate might seem to contemplate there would be no change and give space to the argument they precluded any such action. Likewise, that both the grantor's attorney and the trustee were granted certain powers which they could exercise irrespective of the desires or requests of the grantor, but on analysis it is apparent such provisions are all dependent upon the clause in the original instrument reserving the grantor the right to otherwise direct the distribution of the entire estate by supplemental writings. True also, as urged, some provision was made for Mrs. Chambers out of income but her rights such as they were also depended upon the provisions of the instrument creating them which permitted the grantor to dispose of the estate as he saw fit. Further discussion of the subject would serve no useful purpose. We have carefully examined the trust agreement and have concluded that the only proper construction to place upon its provisions, when considered as a whole, is that it created nothing more than a revocable trust with full power in the grantor to do with the trust estate as he saw fit, including the right, at any time he deemed it to his interest during his lifetime to direct its distribution either to himself or to others. So construed, since it is conceded the consideration for the creation of the trust consisted entirely of money, it follows its delivery to the trustee pursuant to the terms of the instrument was a conveyance in trust for the sole use and benefit of the grantor named therein and such title and possession as was acquired thereunder by the trustee was subject to existing provisions of our statute of frauds (G. S. 1935, 33-101) prohibiting gifts and conveyances of goods and chattels in trust for the use of the person or persons making them.

We pause here to note there is some dispute between the parties as to the force and effect to be given the terms of the supplemental agreement, the appellee contending one paragraph thereof took away from Chambers' wife all power of appointment with respect to the trust estate after his death and appellant insisting another, both paragraphs being quoted at length herein, specifically provided that nothing contained in such instrument should be construed as altering any term or provision of the original with respect to her right, title, benefit, use or interest therein. We think something could be said for both contentions if it became necessary to decide the question but we shall not labor the point for we regard its determination

as of little, if any, importance. Irrespective of what the supplemental agreement accomplished the fact remains that even if the grantor did not intend and failed by its provisions to take unto himself exclusive power of appointment with respect to distribution of the estate he still had and retained not only the power to take that action but likewise the right to make distribution of the corpus and income under the terms of the original. That in our opinion, is the determining factor in reaching a conclusion the trust was for the settlor's use and benefit.

The applicable section of our statute of frauds, to which we have recently referred, is G. S. 1935, 33-101. It reads:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect."

Appellant contends even if the statute is applicable, as we have found it to be, that the trust under consideration is valid notwithstanding. It points out there was no evidence establishing fraudulent intent on the part of Chambers with respect to his creditors or others and directs attention to the fact that so far as liability to appellee is concerned there could have been no intention of that character for the facts upon which such liability was predicated came into existence long after execution of the trust agreement. Briefly stated appellant's position is that the conveyances referred to in the statute just quoted are limited to those where the grantor making them does so with intent to defraud his creditors, and all other conveyances, even though it be conceded they are made for the use of the grantor, are valid. A determination of the question raised by appellant is not devoid of difficulty.

In approaching the subject it should perhaps be stated that our statute had its origin in Stat. 3 Hen. 7, ch. 4, enacted in 1487, which contained language of identical import. The object of this early statute was to render ineffectual nominal transfers of personalty where its use by the declaration of trust remained in him who made the transfer. While fraudulent practices may have been responsible for its enactment it was not a statute against frauds and had no reference to intentions whether fraudulent or honest. Much could be said regarding the subsequent history and development of this statute insofar as it has affected American jurisprudence but time and space will not permit an extended discourse on the subject. It will suffice to say it has been reënacted with immaterial differences in phraseology in many jurisdictions, in others has been enacted

in substance, and in those jurisdictions where it has not been made a part of the statutory law the courts have adopted it in principle with the result it can be said, as a general proposition based on public policy, the American doctrine supported by the great weight of federal and state authorities is, that irrespective of statute an individual cannot create out of his own property for his own benefit a trust for himself and thereby defeat his creditors of their lawful demands.

A concrete, yet complete and comprehensive, statement of the doctrine is to be found in 37 C. J. S. 1048, § 219, which reads:

"The general rule is well settled both at common law and under statute that a person cannot settle his estate, in trust for his own benefit, so as to be free from liability for his debts. The intention of the parties to such transfer, whether honest or fraudulent, is wholly immaterial. The rule is founded on the self-evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other persons. To bring a case within the operation of the rule, it is not necessary that the deed in so many words should express that it is in trust for the use of the grantor, but, if such is the legal effect of it as gathered from the language, the court will as a matter of law declare it void. It is of no importance whether the reservation of the use is contained in the instrument of transfer or rests in parole; it is the fact that property is actually conveyed in trust for the use of the person making the conveyance, whether the declaration of trust is open or secret—expressed in the conveyance, or the subject of a private understanding—which enables creditors to avoid the transfer. Property so settled is assets in the hands of the trustee for the payment of debts, and the giving of unlimited discretion to the trustee does not take the case out of the general rule. That the grantor is solvent at the time of the creation of the trust is immaterial, as is also the fact that the grantor is a spendthrift. . . . While many statutes which invalidate conveyances in trust for the grantor are limited by their terms to goods and chattels, the principle on which they rest is a part of the common law and applies to realty as well as personalty."

To the same effect, but in slightly different form, the rule is stated in other well-recognized textbooks and legal treatises, see 65 C. J. 558, § 308; Restatement, Trusts, § 156; 25 R. C. L. 355, § 6; 24 Am. Jur. 189, 190, §§ 30, 31; 1 Scott on Trusts, 782, § 156; 1 Moore on Fraudulent Conveyances, 417, and 44 Harvard Law Review, 209.

As indicated, this legal principle is almost universally followed by American courts. Reference to the opinions of the following well-considered decisions examined by us, and which are but few of the many that could be cited, will disclose the reasoning responsible for its application; *Mackason's Appeal*, 42 Pa. 330; *Phila-*

*delphia v. Meredith,* 49 Pa. Sup. Ct. 600; *Ghormley v. Smith,* 139 Pa. 584, 21 Atl. 135; *Nolan v. Nolan,* 218 Pa. 135, 67 Atl. 52, *Rienzi v. Goodin,* 249 Pa. 546, 95 Atl. 259; *Benedict v. Benedict,* 261 Pa. 117, 104 Atl. 581; *Pacific National Bank v. Windram,* 133 Mass. 175; *Jackson v. Von Zelditz,* 136 Mass. 342, *Greenwich Trust Co. v. Tyson,* 129 Conn. 211, 27 A. 2d 166; *Sargent v. Burdett,* 96 Ga. 111, 22 S. W. 667; *Brown v. MacGill,* 87 Md. 161, 39 Atl. 613; *Jamison v. Mississippi Valley Trust Co.* (Mo.) 207 S. W. 788; *McColgan v. Magee, Inc.,* 172 Cal. 182, 155 Pac. 995, and *McAlvay v. Consumers Salt Co.,* 112 Cal. App. 383, 297 Pac. 135. See, also, 119 A. L. R. Anno. 19, 35, and 93 A. L. R. Anno. 1211. For other decisions dealing specifically with statutes making conveyances of personalty in trust for the use of the person making them void as against creditors, see *Ward v. Marie,* 73 N. J. Eq. 510, 68 Atl. 1084; *Dillon v. Spilo,* 275 N. Y. 275, 9 N. E. 2d 864; *Sandlin et al., Adm'rs, v. Robbins et als.,* 62 Ala. 477, 484, 485, *Wetherill v. Canney,* 62 Minn. 341, 345, and *Geary v. Cain,* 79 Utah 268, 9 P. 2d 396.

The doctrine just discussed and most of the decisions referred to are not determinative of the appellant's contention under circumstances where, as here, the trust has been found to be for the use of the person making it and a statute is in force and effect making conveyances void but they are indicative of what our decision might be irrespective of such statute and present forceful and additional reasons why, when its provisions must be applied, this court will give its terms a liberal rather than a strict construction.

Directing our attention to the construction to be placed upon the specific language found in G. S. 1935, 33-101, it should be stated at the outset that our examination of the statutes of other states has disclosed very few statutory enactments identical in form and we fail to find—and if there are any counsel neglected to cite them—any foreign decisions directly in point. We can, however, see no reason why decisions dealing with statutes making void as to creditors transfers of personal property made in trust for the use of the grantor should not be helpful and to the point. With that in view we direct specific attention to a number of those cases, where it was held:

"A trust, the object of which is to yield to the settlor monthly installments for his support during his life out of the entire corpus of the estate, and to effect a disposition of any residue at his death as he may appoint by will, and, failing such appointment, then on the further trust to pay to settlor's wife monthly installments, and on the death of both to pay the balance to

their children, and if there be none, then to pay the balance to the next of kin, so far as it transfers personalty is a conveyance 'for the use of the person making the same,' notwithstanding that after the making of the trust settlor cannot immediately subject the entire estate to his use, within 2 Gen. St., p. 1604, § 11, declaring conveyances of personalty for the use of the person making the same void as against creditors." (*Ward v. Marie,* 68 Atl. 1084, headnote 3, supra.)

"Insufficiency of income of trust fund, established by judgment debtor for her own use, for support and maintenance of herself and infant son, was no defense to action brought under statute by judgment creditor against judgment debtor and trustee to reach income from trust fund and apply it on judgment until paid (Personal Property Law, § 34; Civil Practice Act, §§ 684, 685, 793, 1189, 1196)." (*Dillon v. Spilo,* 9 N. E. 2d 864, headnote 5.)

## And said:

". . . Bump on Fraud. Con. 2d ed. 208, speaking of the Stat. 3 Hen. 7, ch. 4, which in substance constitutes § 2120, Code 1876, says, 'It is not directed against trusts made with fraudulent intent, but against trusts themselves. There is not one word about intent, or object, or purpose, or excluding, injuring, or delaying creditors. The effect of the trust is not a subject for consideration. Its mere existence avoids the transfer, and destroys the title as against creditors existing or subsequent. A conveyance by the owner of property to another, in trust for himself, is in effect a conveyance to himself, and such a measure can never be necessary for any legal or honest purpose. . .'

"Section 2120 of the Code of 1876, and the statute of 3 Henry, 7, speak alone of goods, chattels and things in action. It is a common law doctrine, however, and is applicable alike to realty. There never was a time when a debtor could convey his property directly, or in secret trust, for his own benefit, or for the use of his family, and thereby defeat his creditors of their lawful demands—*Huggins v. Perrine,* 30 Ala. 396." (*Sandlin et al., Adm'rs, v. Robbins et als.,* 484, 485, supra.)

"If we understand the claim of plaintiff's counsel, it is that the deed, when read with the agreement, is void as to the plaintiff, as a matter of law, under the provisions of G. S. 1894, § 4218, and that no finding of fact to the effect that the deed was made to delay or defraud creditors was necessary. This section of the statute is limited by its terms to goods and chattels, but the principle upon which it rests is a part of the common law, and applies to realty as well as personalty. It is founded on the self-evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other person. For that purpose the law declares the title to be in the debtor, and no transfer which is entirely nominal can stand in the way. The intentions of the parties to such a transfer, whether honest or fraudulent, are wholly immaterial, for the reason that the property in fact belongs to the grantor, and his creditors are entitled to subject it to the payment of their demands, without reference to when these debts were contracted or the motive for placing the naked nominal title to the property in the name of the grantee. . ." (*Wetherill v. Canney,* 345, supra.)

In a discussion of the construction placed by the courts upon Stat. 3 Hen. 7, ch. 4, *supra,* we find the following statement in 44 Harvard Law Review, 204:

". . . In its original form the statute applies in terms only to gifts of goods and chattels, and it has been held that it applies only to gifts made for the sole benefit of the settlor. It was not directed against trusts made with fraudulent intent, but was a prohibition of trusts for the benefit of the settlor on the ground that such a trust was against public policy. Under this statute all trusts to which it applies are invalid, whether the trusts are spendthrift trusts or not."

In a similar discussion but pertaining to present-day statutes, such as our own, the following statements are found in Restatement, Trusts, §§ 114c, 156 (Kan. Anno.): '

"In some States there are statutes which provide that a transfer in trust for the benefit of the settlor is void. Such statutes are interpreted as applicable only where the intended trust is for the sole benefit of the settlor. Under such statutes creditors of the settlor can reach the property although there was no intention to defraud creditors." (114c.)

"Thus, there is no interest of the beneficiary to reach where the trust is A to B for A because such a gift or conveyance is void and of no effect. The creditors can reach A's interest outside of any question 'of trusts. It should be noted, however, that the statute only applies to 'goods and chattels' and not to land. All the cases in which the above statute has been cited concern conveyances in fraud of creditors, but the terms of the statute include all trusts of personal property where A conveys to B in trust for A." (§ 156 Kan. Anno.)

See, also, 1 Scott on Trusts, 782, § 156, and Restatement, Trusts, § 156b.

So far as our own decisions directly construe the force and effect of the statute under consideration, both appellant and appellee agree there are none in which a trust has been held invalid under the factual situation here involved. We agree with their conclusion in that respect, but are not in accord with the inference to be deduced from some of the argument that the question has not been given any consideration.

In the early case of *Kayser v. Heavenrich,* 5 Kan. 324, involving the validity of a voluntary assignment by an insolvent in trust for his creditors this court said:

". . . In the first of these classes is the amount to be paid Loewenthal, and one-half of this amount is of right the property of one of the assignors, and is a secret trust for his benefit. Does this trust for the benefit of one of the assignors vitiate the whole deed of assignment? Section 1 of chapter 102 of the Compiled Laws declares that 'all gifts and conveyances of goods and

chattels made in trust to the use of the person or persons making the same, shall be and are hereby declared to be void and of no effect.' It is not denied that a part of the trust for which this assignment was made was for the benefit of the maker thereof, and was so far void; but it is contended that it is only void as to such case, and that the property assigned must be distributed pro rata among the other persons named as creditors, as directed by the instrument of assignment. . . . It can make no difference that this claim was but small compared with the general indebtedness. It was an essential part of the whole trust, pervading every part, as much as though it constituted nineteen-twentieths of the trust estate. The conveyance was in trust for the maker's use, and it cannot make any difference that others were interested in the trust when any person, having a right so to do, contests the validity of the conveyance. It comes within the provisions of the section of the statute above quoted, and must be held void." (pp. 336, 337.)

So, also, in *Clark v. Robbins*, 8 Kan. 574, 578, we find the following language:

"In whatever aspect this assignment may be viewed, it is void. If it be considered that the assignment transferred all the said goods to Clark for the purpose that he should hold them in trust for the Robb Bros. [the assignor] until they should receive $800 worth of the same, and then that he should hold the remainder, if there should be any remainder, in trust for the creditors, of the Robb Bros., such assignment would be void. (Gen. St. 504, § 1; *Kayser v. Heavenrich*, 5 Kan. 324.)"

Likewise, in *Mullinville State Bank v. Olson*, 134 Kan. 497, 500, 7 P. 2d 37, in a proceeding in aid of execution connected with a garnishment proceeding, this court after specific reference to the statute under consideration made this statement:

"Aside from the illegal reservation for the benefit of the debtor, there is the general finding of the court on the issue that it was done for the purpose of defrauding and delaying creditors of Olson, . . ."

See, also, *Manley v. Larkin*, 59 Kan. 528, 531, 53 Pac. 859, wherein the statute is likewise referred to and *Kayser v. Heavenrich*, supra, is quoted with approval.

It is true in the cases just cited as urged by the appellant that under the allegations of the pleadings fraud was one of the issues involved and that in some of them the opinions discussed that question and based the decision at least in part on the fact fraud was found to exist, but that fact, in our judgment, in no sense detracts from the import of the language therein found with respect to the force and effect to be given the statute referred to.

From our examination of all the legal authorities herein referred to, and giving the language to be found in G. S. 1935, 33-101 (section 1 of the statute of frauds) the liberal interpretation to which we

think it is intended, we have no difficulty in reaching the conclusion that where a conveyance of personalty is made in trust for the use of the person making the same it is void irrespective of any fraudulent intent on the part of the grantor.

Since it must be conceded the legislature had power to enact the statute and must be assumed that in its enactment that body did not intend to do a useless and senseless thing, we believe, that aside from the authorities heretofore cited, our conclusion is not only fortified but justified because of another reason to which we have not heretofore referred. Reference to the statute discloses that section 2 of our statute of frauds, now G. S. 1935, 33-102, was passed at the same session of the legislature as section 1. It reads:

"Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods, or chattels, shall be deemed utterly void and of no effect."

Scrutiny of the section just quoted reveals that it, among other things, prohibits conveyances of goods and chattels with intent to hinder, delay or defraud creditors. To hold that the provisions of G. S. 1935, 33-101, are only applicable in cases where there is an intention to defraud requires a judicial finding that the legislature did a useless and senseless thing in placing it on the statute books. This, under the plain language of the statute and the authorities, we are unwilling to do. We prefer to hold, as in fact we feel the language of the statute requires, that the provisions of section 1 of the statute of frauds applies to conveyances in trust for the use of the persons making them irrespective of fraudulent intent and that the provisions of section 2 apply to conveyances made with intent to defraud creditors.

Nor do we feel our decision in *Bennett v. Christy*, 137 Kan. 376, 379, 20 P. 2d 813, which is relied upon by appellant in support of its position, can be regarded as contrary to the conclusion just announced. The principal question under consideration in that case and determined by the court was as stated in paragraph 1 of the syllabus which reads:

"The fact that the value of an interest in an oil and gas lease assigned to secure a note, given for a valuable consideration, amounts to more than the debt secured by the assignment and would leave a residue for the assignor, a judgment debtor, does not in and of itself make the assignment fraudulent, nor

does the fact that there is or will be such residue make such assignment, in the absence of fraud, a gift or conveyance in trust for the assignor as mentioned in R. S. 33-101."

In support of the finding the court in the opinion said:

. "The fact that the value of the interest assigned amounted to more than the debt secured thereby, which would naturally leave a residue for the assignor, does not in and of itself make the assignment fraudulent, but it is in harmony with the usual and general rule in securing obligations. Neither does the fact alone that there is or will be such residue make such assignment a gift or conveyance in trust for the assignor as mentioned in the statute above quoted." (p. 379.)

If in some other portion of the opinion there appears language which can be construed as indicating a view on the part of this court that a fraudulent intent to defraud creditors was necessary to avoid a conveyance subject to the provisions of G. S. 1935, 33-101, such language as is susceptible of that interpretation is disapproved.

For convenience and because it requires a discussion of evidence involved in another contention advanced by appellant, presently to be referred to, we now direct our attention to its argument that if the trust is void there is, nevertheless, a resulting trust in favor of L. M. Miller.

We turn directly to well-established definitions of resulting trusts. In Restatement, Trusts, section 404, we find the following definition:

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of."

In 65 C. J. 222, 363, 364, 366, it is stated thus:

". . . a resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance. . ." (§ 13.)

". . . To state it differently, the two general types are: (1) Those where property is conveyed or transferred by one person to another but a third person either furnishes the consideration for the transfer or has such an interest in the property that it is considered as held for his benefit. (2) Those where property is transferred without any consideration coming from the donee or grantee and under circumstances such that he is considered as holding the property for the benefit of the donor or grantor or those holding under him. . ." (§ 139.)

". . . A resulting trust cannot arise where property is given to a person for his own use, and it has been said that it never arises in the hands of one who is the real owner of the property. . ." (§ 140.)

"The doctrine of resulting trusts is founded upon the presumed intention of the parties; and, as a general rule, it arises where, and only where, such may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established. In a resulting trust there is always the element of an intention to create a trust, which is not expressed but is implied or presumed by law from the attendant circumstances and without regard to the particular intention of the parties, so, in a proper case, the trust may exist notwithstanding the party to be charged as trustee may never have agreed to the trust and may have really intended to resist it. However, since a resulting trust is designed to carry the presumptive intention of the parties into effect, not to defeat it, it must be consistent with the intention of the parties at the time of the acquisition of the property and will not be presumed or implied unless taking all the circumstances together it is the fair and reasonable interpretation of their acts and transactions. . ." (§ 141.)

Practically all of our decisions dealing with resulting trusts pertain to real estate but that fact in no sense precludes reliance on or detracts from their force and effect as precedents in disposing of a situation where personalty is involved. We direct attention to *Allbert v. Allbert,* 148 Kan. 527, 531, 83 P. 2d 795, which quotes with approval the definition to be found in 65 C. J. 222, *supra,* also to *Brown v. Brown,* 62 Kan. 666, 64 Pac. 599, involving, except for the fact the corpus was real estate, a somewhat similar situation, where it was held:

"Where a son purchases a farm with funds furnished to him by his mother for that purpose, and takes title in his own name, without any agreement or understanding as to how the title shall be taken, or as to any interest of the mother in the land, and when the mother, with full knowledge of the facts, speaks of and treats the farm for many years as belonging to her son, and makes no complaint to him or to others regarding the title, but acquiesces in that which has been done, it will be presumed, after the death of the son, that the deed conformed to the intention of the parties, and a resulting trust in favor of the mother will not be inferred." (Syl. ¶ 5.)

In the instant case Miller was called as a witness and an attempt was made to establish that money deposited by him with appellant to the credit of Chambers was placed there under the trust agreement for the trust purposes only and that no part of it was given to Chambers personally. Contradicting this evidence was a written instrument signed by Miller himself under date of September 25, 1930, which it should be noted was executed approximately a month subsequent to the date of the execution of the original instrument and expressly stated that in consideration of Chambers having placed $53,283.01 of "said Chambers own money" in the trust, he

agreed to deposit with "said trust company" for inclusion in the trust an additional sum of $60,000. As to this last amount and other money given to Chambers in the past, some of which it must be conceded found its way into the original deposit made by the latter totaling some $90,000, this witness admitted the entire sum was turned directly to Chambers or deposited with appellant to his credit as a gift or gratuity. But this was not all. The evidence of Miller and other witnesses revealed beyond question that it was not until this litigation was commenced that Miller ever made any contention the money given by him to Chambers had any strings attached to it, nor does it appear, that either Chambers or the appellant had any such idea up to that time. Moreover, it is apparent from all the testimony that from August, 1930, until February, 1940, at the earliest all parties concerned, including Miller, regarded and treated the money placed in the purported trust as coming from Chambers' own funds and subject to his use and control irrespective of the source from which it sprang. The terms of the original instrument itself, with which Miller was absolutely familiar, evidence that situation if in fact they cannot be regarded as conclusively establishing it. Under all the circumstances we do not think there was any room for the application of the doctrine of resulting trusts or the trial court committed error in failing to find one existed.

The next two propositions advanced by appellant lose most of their forcefulness by our conclusion the trust was void but we have given them consideration. It is strenuously urged the trial court erred in holding the corpus of the trust estate subject to garnishment, and in overruling the appellant's demurrer to appellee's evidence. With respect to the first contention it can be said the void and ineffective trust left the corpus of the estate in the hands of appellant as the property of Chambers. Whether his interest was legal or equitable need not here be determined, for under our statutes any interest a person may have in property, legal or equitable, is subject to garnishment (*Koelliker v. Denkinger*, 148 Kan. 503, 83 P. 2d 703). As for the contention the trial court erred in overruling the demurrer, appellant's argument is predicated upon the theory it was sued as garnishee in its corporate name, that the evidence disclosed it received the corpus of the estate in its fiduciary, not its corporate, capacity and that, therefore, since it had not been sued as trustee no property belonging to the trust could be

subject to garnishment in this proceeding. We are not impressed with the force of such argument. During the trial appellant admitted the Wheeler Kelly Hagny Trust Company was a Kansas corporation authorized to do trust business and with trust powers given by the laws of Kansas. Moreover, it should be noted the original agreement was with the appellant in its corporate name, while the supplemental was directed to it in that capacity. Under such conditions appellant is in no position to deny liability as garnishee and the trial court's ruling was proper. Aside from the reasons just stated another and additional ground for this conclusion exists. The attempted trust being void, no title vested in the trustee (65 C. J. 526, § 271), the property remained a part of the grantor's estate and was held by appellant for him as a corporate entity authorized under the law of this state to receive and accept money under the circumstances heretofore related.

Appellant next points to a former judgment rendered in a divorce proceeding between Chambers and his wife, wherein the latter was given a certain interest in the income from the trust estate and insists that under its terms Mrs. Chambers acquired such interest in the corpus as to preclude the judgment rendered here and require that she be made a party before there can be any determination of any rights in the property held by it. We are not disposed to go into the validity of the divorce judgment or determine its effect, if any, upon the interest of the parties in the estate. That judgment was directed toward income only and did not purport to affect the principal. It is certain that provisions of the original instrument itself show Mrs. Chambers had no vested rights which would preclude the application of the corpus of the estate to pay the instant judgment. Certain also it is that the amount of such corpus far exceeds any amount necessary to pay it. It follows there was no error in the trial court's ruling that Mrs. Chambers was not a necessary party.

Other objections urged by appellant have been considered but they either do not require answer or have been disposed of by conclusions heretofore announced.

The judgment is affirmed.